[S. F. No. 1964. Department Two.—January 29, 1902.]

## H. H. WILSON, Respondent, v. SOUTHERN PACIFIC RAILROAD COMPANY, Appellant.

RAILROAD GRANT—SALE OF LAND—CONTRACT—DILIGENCE TO PROCURE PATENT—RESCISSION.—Where a railroad company sold land claimed by it as part of a railroad grant from the United States government and contracted to endeavor to procure a patent therefor with reasonable diligence, and that if a patent could not be procured it would return the money paid, the purchaser cannot rescind the

contract of purchase, and reclaim the money paid, so long as the vendor continued to use reasonable diligence, and prosecuted expensive litigation in order to procure a patent, and it had not been finally decided that it was not entitled thereto.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

William Singer, Jr., and H. V. Reardan, for Appellant.

Freeman & Bates, for Respondent.

HENSHAW, J.—This appeal is from the order denying defendant's motion for a new trial. Defendant is vendor and plaintiff vendee in a contract for the sale of realty. The ownership of the land in question was claimed by the defendant under land grants from the United States, but no patent therefor had issued to the company. The contract which they entered into provided for the payment of a portion of the purchase price and the payment of interest upon the unpaid portion, provided that the defendant would use "ordinary diligence" to secure a patent to the land from the United States, and upon the issuance of patent would execute its deed of grant, and further provided "that as, in consequence of circumstances beyond its control, it sometimes fails to obtain patents for lands that seem to be legally a portion of its grant, therefore nothing in this instrument shall be construed a guarantee or assurance that patent or title will be procured; that in case it be finally determined that patents shall not issue to said party of the first part for all or any of the tracts herein described, it will, upon demand, repay, without interest, to the party of the second part all moneys that may have been paid to it."

The evidence and the facts of the case are without substantial conflict. The following is a recital of them: On February 21, 1885, the contract was entered into, and on April 23d of the same year defendant's first application for a patent of the contract land was filed and approved by the United States land officers. Plaintiff paid the annual interest on the unpaid

portion of the purchase price, according to the terms of the contract, until February 21, 1891, and thereafter paid nothing. On December 26, 1895, the plaintiff gave notice of rescission and demanded the return of all moneys paid under the contract.

In 1866 the Congress of the United States authorized the Atlantic and Pacific Railroad Company and the Southern Pacific Railroad Company each to build a railroad in the state of California, and provided a grant of lands to aid in constructing each of the contemplated roads. The act of Congress was a grant *in præsenti* of the lands, which, when maps of definite location were filed and approved, took effect by relation as of the date of the act. (*United States* v. *Southern Pacific R. R. Co.*, 146 U. S. 570.) In December, 1866, the defendant accepted this land-grant, filed such acceptance in the office of the Secretary of the Interior, and on January 3, 1867, filed its map of the general route of its entire railroad, the right to construct which it claimed under the act of 1866, and on that day the Secretary of the Interior and the commissioner of the general land office duly accepted and approved the map, and the general route shown thereon. In March, 1867, the commissioner of the general land office, under direction of the Secretary, withdrew all odd sections within thirty miles of the line designated upon the plat. By letter of July 14, 1868, the Secretary ordered the withdrawal made under his direction suspended. By letter of August 20, 1868, he restored the original withdrawal order. By letter of November 11, 1869, he again declared the original withdrawal order revoked. By letter of December 15, 1869, he again restored the original withdrawal order. By letter of July 26, 1870, he directed that the original withdrawal order remain in force.

It was not until March 9, 1872, that the Atlantic and Pacific Railroad Company filed in the office of the commissioner of the general land office maps, designating the line of its route, and this designation was accepted by the United States, and in like manner the Secretary of the Interior and the commissioner of the general land office ordered all the odd sections of land within thirty miles on each side of the designated line of route of the Atlantic and Pacific Railroad reserved from sale and withdrawn.

By act approved March 3, 1871, Congress incorporated the Texas Pacific Railroad Company, and made to it a grant of public lands, and in the same act authorized the Southern Pacific Railroad Company to construct a line of railroad from a point at or near Tehachapi Pass to the Texas Pacific Railroad at or near the Colorado River, "with the same rights, grants, and privileges, and subject to the same limitations, restrictions, and conditions, as were granted to said Southern Pacific Railroad Company of California by the act of July 27, 1866. Provided, however, that this section shall in no way affect or impair the rights present or prospective of the Atlantic and Pacific Railroad Company or any other railroad company." The Southern Pacific Railroad Company built its railroad as proposed and agreed. The Atlantic and Pacific Company constructed no railroad in California. The land here in question is within the limits of the grant to the Southern Pacific Company under the act of 1866, within the limits of the grant to the Atlantic and Pacific Company by the terms of the same act, and within the limits of the grant to the Southern Pacific Company by the act of 1871. The route of the road constructed by the Southern Pacific was that laid out upon its maps filed and approved under the act of 1866. Section 4 of the act of 1866 provides that whenever the company shall have constructed twenty-five consecutive miles of any portion of said railroad and telegraph line ready for the service contemplated the President of the United States shall appoint three commissioners to examine the same, and if the commissioners shall report under oath to the President of the United States that the work has been done within the contemplation of the terms of the grant, patents for the lands shall be issued to the company, and this shall be done from time to time as and whenever twenty-five additional consecutive miles shall have been constructed. By amendment to this act in 1870 (16 U. S. Stats., 382) the commissioners are to report to the Secretary of the Interior, instead of the President, whereupon "it shall be the duty of said Secretary of the Interior to cause patents to be issued to said company for the sections of lands," etc.

The road constructed by the Southern Pacific Company was examined by commissioners appointed by the President for that purpose from time to time as the sections were completed,

and these commissioners duly reported that the road had been completed in all respects as required by the act. All of their reports were made prior to the year 1885, and were accepted and approved at different dates between August 7, 1871, and September 8, 1897, inclusive, the latest of said reports being the report upon the section of road extending from Mojave to Needles, which was approved only upon September 8, 1897. The branch-line road of the Southern Pacific contemplated by the act of March 3, 1871, was constructed as contemplated, from Mojave through Los Angeles to Yuma. This road was duly examined by commissioners appointed by the President for that purpose, their reports accepted, and the same were approved by the President prior to the year 1877. On April 23, 1885, two months after the making of this contract, defendants applied for a patent for the land in dispute, under the branch-line grant of 1871. This application was on that day approved by the local land officers. The acceptance and approval by the land officers and the selection thus made on April 23, 1885, was recognition by the government officers having the power and jurisdiction to dispose of the question of the right of the defendant to a patent. It was in the nature of a judgment determining their right to a patent, and conclusive in their favor until set aside by some higher authority. It thus appears without dispute that within two months after the execution of this contract the defendant had applied for patents to the lands in question, and its application had been approved. Thus it had executed to the fullest extent its obligation to exercise ordinary diligence in the procurement of the desired patents. Notwithstanding the action of the government officers, patents to these lands were not in fact issued. The reason becomes apparent when it is remembered that the lands (or some of them), while embraced within the grant to the Southern Pacific Company under the act of 1871, were likewise embraced within the grant to the Atlantic and Pacific Company by the act of 1866, and the Atlantic and Pacific Company had protested against the issuance of patents to the defendant company. In 1886, however, Congress declared forfeited the grant of the Atlantic and Pacific Company because of its failure to construct its road, and litigation arose between the United States and the Southern Pacific Company as to the latter's claim of title to these lands. Briefly summar-

ized, the essential points in the litigation were two: 1. It was contended by the Southern Pacific Company that the maps filed by the Atlantic and Pacific Company in 1872 were incomplete, insufficient, and incompetent under the terms of the act, and that therefore no title to the lands did vest or could have vested in the Atlantic and Pacific Company; and 2. That if such title did vest, then, as the purpose of the grant was to secure for the benefit of the United States and its people the construction of a railroad, the forfeiture of the grant to the Atlantic and Pacific Company should operate in favor of and to vest title in the Southern Pacific Company under the act of 1871, because the Southern Pacific Company had faithfully complied with the terms of the grant. The decisions of the United States supreme court (*United States* v. *Southern Pac. R. R. Co.,* 146 U. S. 570, and *Southern Pac. R. R. Co.* v. *United States,* 168 U. S. 1) were to the effect that the maps filed by the Atlantic and Pacific Company were sufficient within the terms and for the purposes of the act of 1866, and upon the filing and approval of these maps of definite location the grants *in præsenti* took effect by relation to the date of the passage of the act of 1866. It was further decided that, as legal title had thus vested in the Atlantic and Pacific Company in the year 1866, the act of 1871 in favor of the Southern Pacific Company, could not operate upon any such lands, which were, therefore, under the Forfeiture Act of 1886, restored, so far as the claim of the Southern Pacific Company to these lands under the act of 1871 was concerned, to the public domain. Nothing in these decisions, it should be added, touched in any way upon the claim or right of the Southern Pacific Company to these lands under its main-line grant in the act of 1866, and the trial court was therefore correct in deciding that the question as to whether patent to these lands should or should not issue to the Southern Pacific Company had not been finally decided. This was a question disputed in the argument and in the briefs of counsel, respondent insisting that the decisions of the United States supreme court in the case above cited were absolutely determinative of the question against the decision of the trial court, but the question has since been laid at rest and absolutely disposed of in favor of the determination of the trial court and of the appellants upon this hearing by the decision

of the supreme court of the United States in *Southern Pacific Company et al.*, appellants, v. *United States*, appellee, Nos. 18 and 24, which were cross-appeals from the United States circuit court of appeals for the ninth district, and which appeals were decided upon January 6, 1902.

So far as this statement and discussion have proceeded, these facts have been made apparent: 1. That it has not been finally decided that patents to these lands should not issue to the Southern Pacific Company; and 2. That in the matter of its application for a patent to these lands under the act of 1871, plaintiff exercised all the diligence for which its contract called. But, as showing lack of diligence, it is argued by respondent that defendant should also have made application for patents to these lands under the act of 1866. Before considering this question, however, it is pertinent to call attention to the fact that the diligence with which defendant charged itself in its contract was ''ordinary'' diligence. It is a presumption that the average man in the exercise of his own affairs, where the result upon the one hand will make for his benefit, or upon the other to his detriment, will exercise ordinary care and diligence in the protection of his interests. Moreover, when lack of such diligence is charged in a breach of contract or legal duty, it is incumbent upon the plaintiff to establish such lack by a preponderance of evidence. Under this contract it is plain that it was to the great advantage of the Southern Pacific Company to secure patents to these lands, as only upon the issuance of such patents did it acquire a merchantable title to them. It is a natural presumption, therefore, that it would use the diligence of the ordinary person dealing with his own affairs, to secure what was of great material benefit to itself. That it acted with due diligence under the act of 1871 has been said and shown. It further appears that within two months after the decision of the supreme court of the United States (*United States* v. *Southern Pacific Co.*, 146 U. S. 570) it made application for patents to these same lands under the act of 1866. As has been said, it is charged by respondent with negligence in not having done so earlier. The complete answer is disclosed by the facts of the case. It mattered not to either plaintiff or defendant whether it obtained patent to these lands under the act of 1866 or under the act of 1871, provided only that the patent

was secured. Applications for patents under the act of 1871 had been made and approved. The defendant was justified in resting upon this judgment of the land department in its favor until that judgment was disturbed or overthrown by the supreme court of the United States in the decision in the one hundred and forty-sixth volume of its reports. Immediately thereafter, as has been said, it made application for patent under the earlier act. Why it had not done so before is shown without dispute by the evidence. The testimony of defendant's land-agent is, that the withdrawals made by the land department of the United States of the Southern Pacific Railroad Company's grant under the act of 1871 covered at the point of intersection the withdrawal theretofore made for the same company under the act of 1866. Notwithstanding the fact that the commissioners duly appointed had made their favorable report upon that portion of the main line constructed from Mojave to the Needles, for some reason, neither the Secretary of the Interior nor the President of the United States approved the commissioners' report, and experience showed that it was useless to apply for patents to the land of that section of the road, because the applications would not be approved while the commissioners' reports remained unapproved; that, in fact, prior to the date of its contract he had applied for patents to 584,686 acres, and after that date, and before May 20, 1900, he had also made application for patents for 979,135 acres of land, for which he had paid the United States the sum of seventy thousand dollars for costs of patenting. Yet his applications had not been approved, and patents for only 2,700 acres had been issued; that he was advised by the Washington attorneys of the company that it was useless to make further applications for lands of the main-line grant between Mojave and Needles, as they would not be approved; that, as the company's land purchasers were becoming anxious for patents, he had applied for patents under the branch-line grant of 1871, for lands within limits common to both branchline and main-line grants, thinking it immaterial, so long as the patents issued, under which grant they might be given; that only in 1891 had he been informed by his Washington attorneys that the land officers of the United States had at last concluded to issue patents to these main-line lands, and thereupon he promptly resumed the selection of such lands for pat-

ents under that grant. Finally, the commissioners' reports in favor of the acceptance of the main-line road from Mojave to Needles, which had all been filed with the Secretary of the Interior prior to the year 1885, were not approved by either the President of the United States or the Secretary of the Interior until September 8, 1897. Further explanation and corroboration will be found in the letter of Secretary Bliss of September 8, 1897, (R. R. Grant—Acceptance of Constructed Road—*In re* Southern Pacific R. R. Co.—25 Land Dec. Dept. Int., 223,) in which it is shown that the approvals were withheld because of the protests of the Atlantic and Pacific Company against the issuance of the patents. The letter reviews the history of the grants and the controversy which had arisen over them, and concludes, finally, with the expressed determination ''to accept the report and approve roads as constructed.''

Thus the defendant was not only justified in relying on the approval of its application for patents under the act of 1871, but it is shown by the government officers themselves, and by the record of its rejected applications for patents made under the act of 1866, that any earlier applications for patents under that grant than the ones which the company actually made, would have been futile.

It is not to be perceived, therefore, that the defendant has been in any respect negligent in its attempts to comply with its contract and to secure patents for these lands, but, on the contrary, it being to its manifest interest so to secure them, it has taken all proper steps to that end, and has defended and prosecuted expensive litigation for that purpose.

The judgment and order appealed from are therefore reversed and the cause remanded.

Temple, J., and McFarland, J., concurred.