[L. A. No. 1482. Department Two.—January 17, 1906.]

## SOUTHERN PACIFIC COMPANY, Appellant, v. LOUIS LIPMAN, Respondent

VENDOR AND PURCHASER — SALES OF RAILROAD LANDS — FORECLOSURE— JUDGMENT UPON COUNTERCLAIMS—APPEAL—REVIEW OF ORDER DENYING NEW TRIAL.—In an action by a railroad company as vendor to foreclose contracts for the sale of lands, where judgments were given upon counterclaims for money partly paid for want of title in the plaintiff, upon appeal from an order denying a new trial to the plaintiff, *held,* that the specifications of insufficiency of the evidence to justify the decision were sufficient under the liberal rule followed by this court, but that the questions involved are equally available under appellant's exceptions to rulings on the admission of evidence, and also under the exceptions to a ruling denying a motion of nonsuit upon the counterclaims.

ID.—LANDS ACQUIRED UNDER MAIN-LINE GRANT OF 1866—GRANTS IN PRAESENTI.—The grants made by the act of Congress of 1866 in

aid of the main lines of the Atlantic and Pacific Railroad Company and of the Southern Pacific Company were grants *in praesenti,* which when maps of definite location were filed and approved took effect by relation as of the date of the act.

ID.—CONCLUSIVE DECISION AS TO RIGHTS OF PLAINTIFF—PENDENCY OF MOTION FOR NEW TRIAL.—Where pending suit, and before the motion for a new trial was passed upon, the supreme court of the United States determined that the United States, as successor to the forfeited grant of 1866 made to the Atlantic and Pacific Railroad Company, was a tenant in common with the Southern Pacific Company in respect of its conflicting main-line grant of 1866, and that equity required that in partitioning said lands any lands which the Southern Pacific Company had assumed to sell must be among those set off to it, such decision, though made pending suit, was conclusive as to the rights of the plaintiff to the lands contracted for within the main-line grant, and such rights should have been considered in passing upon the motion, and are available on appeal from the order denying it.

ID.—LETTER FROM COMMISSIONER MAKING PARTITION—JUDICIAL NOTICE. —The court will take judicial notice of a letter from the commissioner of the general land office, in connection with the federal decision, showing that the government has complied with its equitable requirement, and has in making partition of the lands set off to plaintiff the lands described in the contracts which are located within the limits of plaintiff's main-line grant.

ID.—INDEMNITY LANDS—APPROVAL OF SELECTION.—Where it is admitted as to the contracted lands included within the indemnity limits of the main-line grant of 1866 that the sections including them were selected by the Southern Pacific Company, and the register and receiver of the proper land office had approved the selection, such approval was the recognition by the government officers having power and jurisdiction to determine the right of that company to a patent therefor, and is conclusive in its favor until set aside by higher authority.

ID.—DILIGENCE OF APPELLANT—FINDING AGAINST EVIDENCE.—Where the evidence shows that the appellant for several years prior to the execution of the contracts and continuously thereafter vigorously asserted its claim to all the lands to which it claimed title under the act of 1866, and any delay in procuring patent therefor was not by any want of ordinary diligence on its part in endeavoring to procure the same, any finding to the contrary is not sustained by the evidence.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion of the court.

CXLVIII Cal.—31

William Singer, Jr., H. V. Reardan, and Guy Shoup, for Appellant

Bigelow, Dorsey & Titus, for Respondent.

LORIGAN, J.—This is an appeal from an order denying the motion of plaintiff for a new trial.

On September 6, 1888, plaintiff and defendant entered into six contracts for the sale and purchase of real property situated in Los Angeles County, this state. Each contract related to a separate quarter-section of land, and the first four—Nos. 9,886, 9,887, 9,888, and 9889—embraced all of section 27, township 6 north, range 10 west, San Bernardino base and meridian. The other two—Nos. 9,890, and 9,891— embraced the north half of section 27, township 8 north, range 10 west, same base and meridian. All these contracts were identical in terms, save as to the property described in each. The purchase price fixed was four hundred dollars per quarter-section, part ($80) payable on the execution of each contract. and the balance ($320) on or before September 6, 1893, with interest thereon payable annually in advance until paid. Defendant paid interest under each of the contracts up to September 6, 1895, but paid no further interest, or any part of the purchase price, save the original payment of eighty dollars. Each of these contracts provided that upon payment of interest and the full purchase price by defendant plaintiff would execute to him a deed of conveyance of the premises described therein, after receipt by it of a patent therefor from the United States, and relative to the procuring of such patent each contract contained the following covenants: "It is further agreed between the parties hereto that the party of the first part claims all the tracts hereinbefore described as part of a grant of lands to it by the Congress of the United States; that patent has not yet issued to it for said tracts; that it will use ordinary diligence to procure patents for them; that as, in consequence of circumstances beyond its control, it sometimes fails to obtain patent for lands that seem to be legally a portion of its said grant, therefore nothing in this instrument shall be considered a guaranty or assurance that patent or title will be procured; that, in case it be finally determined that patent shall not issue to said party of the

first part for all or any of the tracts herein described, it will, upon demand, repay (without interest) to the party of the second part all moneys that may have been paid to it by him on account of any of such tracts as it shall fail to procure patent for, the amount of repayment to be calculated at the rate and price per acre fixed at this date for such tracts by said party of the first part, as per schedule on page 3 hereof. It is further agreed that if the party of the first part shall obtain patents for part of the lands herein described, and shall fail to obtain patent for the remainder of them, this contract shall in all its provisions be and remain in full force and virtue as to the tracts patented, and shall, except as to repayments herein provided for, be null and void as regards those tracts for which it shall be finally determined that patents cannot be obtained."

On February 8, 1899, plaintiff brought this action to obtain a decree foreclosing the rights of defendant to purchase the land described in such contracts, unless all sums due the plaintiff thereunder were paid within such reasonable time as the court might allow, and for general relief, alleging that it had complied with all the conditions of the several contracts, and that defendant had failed and neglected to make the payments provided for therein to be paid on his part. By way of answer and counterclaim, defendant denied that plaintiff had any title or interest whatever to any of said lands, and alleged that it had been finally determined by the supreme court of the United States, and by the land department of the United States, that patent shall not issue to plaintiff for any part of the land embraced in the contracts, and that plaintiff had failed to use ordinary diligence to procure patents for them; these several allegations being based upon the covenants in the contracts heretofore quoted. He further alleged that he had, on October 18, 1898, notified plaintiff that he had elected to rescind such contracts, and asked for judgment against plaintiff for repayment of the amounts paid it thereunder. The court made its findings in favor of the defendant upon all the issues made by the pleadings, and entered its judgment in his favor for the sum of $1,184, the aggregate amount paid by the defendant to the plaintiff under the terms of the contract. The plaintiff's motion for a new trial was based, among other things, upon alleged insufficiency of the

evidence to sustain certain findings made by the court, and on account of errors of law alleged to have been committed during the trial.

The findings particularly attacked, and a consideration of which is involved upon this appeal, were to the effect that when the contracts in suit were entered into—September 6, 1888—plaintiff had no right, title, or interest to the land described therein; that it had not done or performed any or all of the things required by the terms and conditions of the several contracts; and a general finding "that all the allegations of the defendant's answer as to the several counterclaims therein alleged and set forth are true." This general finding necessarily included particular findings in favor of defendant's allegations that it had been finally determined that no patent should be issued to plaintiff for the lands described in the contract, and that plaintiff had failed to use ordinary diligence to procure them. Considering all these findings together, they amount to but the same thing—two findings to the effect,—1. That when the contracts were made plaintiff had no interest in the land described, because it had since been finally determined that patent therefor shall not issue to it; and 2. That plaintiff had not complied with the conditions of its contract because it had not used ordinary diligence to procure such patents. Whether these findings are sustained by the evidence is the main and controlling question on this appeal. At the threshold of this inquiry it is insisted that these findings cannot be considered because there are no sufficient specifications of the insufficiency of the evidence to sustain them. We think, however, that under the liberal rule now followed by this court (*Bell* v. *Staacke,* 141 Cal. 186, [74 Pac. 774]; *Jones* v. *Goldtree,* 142 Cal. 383, [77 Pac. 939]), the specifications are sufficient. We do not dwell on this point, because, even if it be conceded that they were not sufficient, still the questions which are sought to be raised under them are equally available to the appellant under its exception to the ruling of the court in the admission of evidence, under the agreed statement of facts hereafter referred to, and upon which alone the findings can be sustained. It is equally available under the exception of plaintiff to the ruling of the court denying its motion for a judgment of nonsuit upon the counterclaims of defendant, which motion was based on the

grounds that there was no evidence showing neglect in an effort to procure patents, and no proof that it had been finally determined that plaintiff was not entitled to them. The commission of error in its rulings by the superior court in both these particulars were grounds upon which appellant moved for a new trial, and are grounds urged for a reversal here. So that even if the specifications were insufficient, still the legal result which is sought to be accomplished by a successful attack on them—a reversal of the order denying the motion for a new trial—would be as fully secured if the correctness of either of these rulings could not be sustained. But we are satisfied that the specifications are sufficient, and, as the main question in the case is whether the evidence was sufficient to sustain either of the findings, we will address ourselves to a consideration of that point.

The lands described in the several contracts were claimed by the plaintiff as part of the lands to which it was entitled under an act of Congress of 1866. That act authorized the Atlantic and Pacific Railroad Company and the plaintiff— the Southern Pacific Railroad Company—to each construct a railroad in the state of California, and provided a grant of lands for the purpose of aiding in the construction of each of said roads. The grants to both the companies were grants *in praesenti,* which, when maps of definite location were filed and approved, took effect by relation as of the date of the act. (*United States* v. *Southern Pacific R. R. Co.,* 146 U. S. 595, [13 Sup. Ct. 152].) Each of the companies above designated filed in the office of the commissioner of the general land office maps of definite location of the routes of their respective roads, the plaintiff making such filing January 3, 1867, and the Atlantic and Pacific Railroad Company on March 9, 1872. These maps, and the general routes designated thereon, were approved by the United States on the respective dates of filing thereof, and the commissioner of the general land office and the secretary of the interior withdrew from sale all odd sections of land within thirty miles on each side of the designated route of each company. The route designated on the map of the Southern Pacific from Mohave to Needles was on the same general course and contiguous to the line adopted by the Atlantic and Pacific Railroad Company. In 1871 Congress, by act of that year, incorporated the Texas Pacific Railroad Com-

pany, and granted it public lands to aid in the construction of its road. This act also authorized the Southern Pacific Railroad Company to construct a road from Tehachapi Pass to meet the Texas Pacific Railroad near the Colorado River, and the act extended to it the same rights, grants, and privileges as were given it under the act of 1866, with a proviso, however, that such rights granted should in no way affect or impair the rights, present or prospective, of the Atlantic and Pacific Railroad Company. The grant of public lands to plaintiff by this later act is known as the "branch-line grant," and under it plaintiff constructed its branch-line road as contemplated in the act from Mohave through Los Angeles to Yuma. Under the act of 1866, known as the "main-line grant," plaintiff constructed its main line of road on the general route as designated upon its map filed and approved under that act from Mohave to Needles. The lands described in the several contracts are within the primary or indemnity limits of such main-line grant to plaintiff under the act of 1866, and within the limits of the grant to the Atlantic and Pacific Railroad Company under the same act, but none of them are within the limits of the grant under the act of 1871. The plaintiff, as we say, built its main road in California as contemplated by the act of 1866, but the Atlantic and Pacific Railroad Company, though it filed its map of definite location in 1872, never did in fact construct any road in California, and in 1886 Congress declared forfeited the land grant made to the Atlantic and Pacific Railroad Company in aid of the contemplated construction by it of such road.

We have referred to the matter of these respective grants in a general way as bearing on the question at bar. A more particular discussion of them will be found in *Wilson* v. *Southern Pacific R. R. Co.,* 135 Cal. 425, [67 Pac. 688], a case in its general aspect similar to the case at bar, and in a letter of Secretary Bliss of the interior department (*In re Southern Pacific Railroad Co.,* 25 Land Dec. Dept. Int. 223.) Both the Wilson case and the secretary's letter deal with the history of these grants, the protest of the Atlantic and Pacific Railroad Company to the land department against the issuance of patents to the plaintiff for any lands within the conflicting limits of both grants, under either the act of Congress of 1866 or the act of 1871, and the litigation between plaintiff

and the United States as to the title of plaintiff to these lands upon the forfeiture by Congress of the grant made to the Atlantic and Pacific Railroad Company.

With this preliminary statement of the general history of these grants, we now approach a consideration of the findings. The only evidence in the case in support of the finding that it had been finally determined that patent should not issue to plaintiff for the lands described in the contracts, and a portion of the evidence offered in support of the finding that plaintiff had not used ordinary diligence to procure such patents, is contained in the following agreed statement of facts offered by defendant upon the trial and admitted in evidence over plaintiff's objection and exception reserved: "It is hereby stipulated by the parties to the said action that all of the land mentioned and described in the pleadings herein is situated within the primary limits of the grant made by the United States by act of Congress approved July, 1866, to the Atlantic and Pacific Railroad Company; and that the land described in contracts Nos. 9,890 and 9,891 is within the indemnity limits, and the rest thereof within the primary limits of the grant made to the plaintiff herein by the act of Congress above mentioned, as the lines of railroads of said respective companies were definitely located, as shown by the records and maps of the United States land department; and that the plaintiff had no other title or claim to said lands save that derived from such grant under said act.  It is further stipulated that plaintiff selected the land described in contracts Nos. 9,890 and 9,891 for patent in its main-line list No. 80 on May 15, 1893, and not prior thereto; and said selection was approved by the register and receiver of the United States land office at Los Angeles on August 11, 1893; and that plaintiff selected all the rest of the land described in this action for patent in its main-line indemnity list No. 50 on August 31, 1894, but that plaintiff has never received any patent from the United States for any part of said lands. It is further stipulated that the allegation in the answer that it has been finally decided that patent for said lands should not issue to the plaintiff herein has no support other than the decisions rendered by the supreme court of the United States in the cases of *United States* v. *Southern Pacific R. R. Co.*, 146 U. S. 570, [13 Sup. Ct. 152] ; *United States* v. *Colton*

*Marble and Lime Co.*, and *United States* v. *Southern Pacific R. R. Co.*, 146 U. S. 615, [13 Sup. Ct. 163] ; and *Southern Pacific R. R. Co.* v. *United States,* 168 U. S. 1, [18 Sup. Ct. 18], and that no part of any of the lands in this suit was involved in either or any of said cases. It is further stipu- lated that none of the land involved in the first three cases above mentioned as being found in 146 U. S. 570, [13 Sup. Ct. 152], was situated within either the primary or indemnity limits of the above-mentioned grant to the Southern Pacific Railroad Company made by act of Congress of July 27, 1866, but was situated within the limits of its branch-line grant made by act of Congress approved on March 3, 1871; but that in said last-mentioned case of *Southern Pacific R. R. Co.* v. *United States,* 168 U. S. 1, [18 Sup. Ct. 18], about six sec- tions of the land involved were situated within the primary limits of said grant of July 27, 1866, to the plaintiff, as well as within the limits of the said branch-line grant of March 3, 1871, to the plaintiff, but that in the pleadings in said action no mention was made of said grant, nor did the plaintiff herein in its answer in said case assert any right to any of the land therein involved under its said grant of 1866, nor was any evidence introduced by either party tending to show any part of said six sections within the limits of the plaintiff's said grant by the act of July 27, 1866."

It will be observed (as this stipulation contains the only evidence on the point) that the finding that it had been finally determined that patents for these lands shall not issue to plain- tiff is rested entirely upon the conclusion of the lower court that the several decisions of the supreme court of the United States referred to therein so held. But, as is pointed out in *Wilson* v. *Southern Pacific R. R. Co.*, 135 Cal. 425, [67 Pac. 688], the only question presented for determination in those cases was the right of the plaintiff to the lands there involved under the branch-line grant act of 1871. In those cases it was simply held that upon the filing of its map of definite location by the Atlantic and Pacific Railroad Company, and the approval thereof by the United States government, the grant *in praesenti* took effect by relation as of the date of the passage of that act; that as the title had thus vested in the Atlantic and Pacific Railroad Company in 1866, the act of 1871 could not operate upon any land within the limits of

the grant under the act of 1866; that under the act of 1886 forfeiting the grant of the Atlantic and Pacific Railroad Company, these lands became restored to the public domain unaffected by any claim of the Southern Pacific Railroad Company to them under the act of 1871. None of these cases involved any question as to the claim or right of plaintiff to lands (including those described in the contracts here under consideration) under the main-line grant in the act of 1866, and as that point was not involved in those cases, they necessarily did not determine that plaintiff was not entitled to patents for those lands under that act, but only that it was not entitled to them under the branch-line grant act of 1871.

While the motion for a new trial in the case at bar was pending before the lower court, disposition of it was held in abeyance pending the decision of the supreme court of the United States in the case of *Southern Pacific R. R. Co.* v. *United States,* on appeal from the circuit court of the United States for the ninth district, which involved the right of the plaintiff to these lands under the main-line grant act of 1866. That suit was brought by the United States to quiet title of the government against the Southern Pacific Railroad Company to all the odd-numbered sections of land in California, within the conflicting primary and indemnity limits of the grant made by Congress to the Atlantic and Pacific Railroad Company and the Southern Pacific Railroad Company under the act of 1866. It included the lands in the case at bar. The Southern Pacific Railroad Company in that action asserted title to all the lands involved under the act. A statement of the different classes of land claimed will be found in 98 Fed. 27. The supreme court of the United States decided the appeal from the circuit court January 6, 1902, and the case is reported in 183 U. S. 519, [22 Sup. Ct. 154]. In its decision that court held that as to the lands within the conflicting primary limits of the grant (which includes section 27, township 6 north, range 10 west, described in the first four contracts numerically mentioned above) the United States and the Southern Pacific Railroad Company each owned an undivided moiety of such lands and dismissed the complaint as to all other lands involved in the action (including those within the indemnity limits of the grant) without prejudice to further action or suit. In that decision the supreme court of the

United States referred to the cases cited in the agreed statement of facts and expressly held that none of those cases adjudged that plaintiff had no title to any land by virtue of the act of 1866.

Subsequent to this decision the trial court in the case at bar denied the motion for a new trial, and in a short opinion which embraced the order of denial stated that as to this latest decision of the supreme court: "In so far as it related to equal moiety in the lands it amounted to a confirmation of the original decision that no patent should issue for the whole of the land, and that it is not sufficient that by any decree or construction of a grant they were awarded a lesser amount." In reaching this conclusion, however, the lower court inadvertently overlooked the provision in each contract that if "the party of the first part shall obtain patent for part of the lands herein described, and shall fail to obtain patent for the remainder of them, this contract shall in its provision be and remain in full force . . . as to the tracts patented and shall be void . . . as regards those tracts for which it shall be finally determined that patent cannot be obtained." As the decision of the supreme court was to the effect that the United States and the plaintiff took each an undivided moiety of the lands within the conflicting primary limits, it could not be determined what particular portion of the lands the plaintiff would be awarded until a partition was had. So that if the decision proceeded no farther than to declare that the plaintiff and the United States were tenants in common in equal undivided moieties of these lands within the primary limits of the grant, it would still leave the question undetermined as to the particular tracts to which plaintiff would ultimately be entitled to a patent within those primary limits and to which the contracts would apply. The decision, however, did not rest with adjudging the respective interests of the parties. In addition to that, the court said: "The United States and the Southern Pacific being, therefore, tenants in common for a large body of lands a partition is necessary. It was suggested by Secretary Lamar . . . that the Southern Pacific take only every other alternate odd-numbered section. We see no impropriety in such mode of partition, though under the case as it stands we can make no order

to that effect. In whatever way partition may be had, equity requires that the lands which the Southern Pacific has assumed to sell and which were excepted by the circuit court from the decree in favor of the United States, to which they took their cross-appeal, must be among those set off to the Southern Pacific, and thus the title to the purchasers be perfected,'' and that the adjustment of the grant is properly to be had in the land department. In conformity with this equitable requirement, it appears from a certified copy of a letter of the commissioner of the general land office to the register and receiver of the land office at Los Angeles, dated February 28, 1903, (filed in this court upon the oral argument,) that the lands in the case at bar which are within the conflicting primary limits —all of section 27, township 6 north, range 10 west—have been selected by plaintiff and will be set off to it in due course of time, and patents therefor will be issued to the plaintiff.

It is insisted by counsel for respondent that neither the decision of the supreme court in 183 U. S. 519, [22 Sup. Ct. 154], nor the commissioner's letter can be taken into consideration as evidence because the decision of the supreme court of the United States was rendered and the letter written subsequent to the decision in the case at bar, and, as counsel say, have ''no legal significance in the determination of the motion for a new trial.'' But they are not considered as evidence at all. The decision is taken as conclusive authority that the conclusion reached by the trial court that it had been finally determined by the prior decisions of the supreme court, cited in the agreed statement of facts, that patent shall not issue to plaintiff for these lands within its main-line grant, was wrong. And the letter of the commissioner of which we take judicial notice (*Southern Pacific R. R. Co.* v. *Wood*, 124 Cal. 475, [57 Pac. 388]), is considered in connection with that decision, as showing that the government has conformed to the equitable requirement declared therein and partitioned between itself and plaintiff the lands within the conflicting primary limits of the grant, so as to set off to the plaintiff the lands in the case at bar within such limits which it had assumed to sell, in order that, as the court said, ''Thus the title to the purchasers be perfected.''

So far we have considered only the right of plaintiff under

the decision of the supreme court of the United States relative to the lands described in the contracts in question which lie within the conflicting primary limits of the grant made by the act of Congress of 1866. Now, as to the indemnity lands. These consist of the lands described in the contracts numbered 9,890, 9,891, as the north half of section 27, township 8 north, range 10 west. It is insisted by respondent that as these lands are within the primary or place limits of the forfeited grant to the Atlantic and Pacific Railroad Company, they cannot be selected by plaintiff as indemnity land within said forfeited limits. We do not deem it necessary to discuss this point to any extent, or refer to the authorities cited by counsel. The right of plaintiff to these lands under the act of 1866 was not involved in any of the cases cited in the agreed statement of facts, nor was the right to them asserted under the act of 1866 by the plaintiff determined one way or another by the supreme court of the United States in the decision in 183 U. S. 519, [22 Sup. Ct. 154]. That decision dealt with the primary lands only. As to the right of plaintiff to the lands within the indemnity limits of the grant under the act of 1866, presented for consideration in that case, the court declined to pass upon it, but dismissed the complaint without prejudice to any suit or action relative to them. As far, then, as the decision of any court is concerned, there has been no final determination that patent shall not issue to plaintiff for these lands. Neither has the government determined that plaintiff is not entitled to patent for them. On the contrary, such action as the government has taken would indicate that plaintiff is entitled to a patent for them. It is admitted in the agreed statement of facts that as to these indemnity lands in the case at bar the plaintiff made the selection of them for a patent in its main-line list numbered 80 on May 15, 1893, and that the register and receiver of the United States land office at Los Angeles approved such selection on May 11, 1893. In the case of *Wilson* v. *Southern Pacific R. R. Co.*, 135 Cal. 421, 425, [67 Pac. 688, 689], this court said, in speaking of an approval by the local land officers of a selection similar to the one under consideration here: "The acceptance and approval by the land officers and the selection thus made on April 23, 1885, was the recognition by the government officers having the power and

jurisdiction to dispose of the question of the right of the defendant to a patent. It was in the nature of a judgment determining their right to a patent, and conclusive in their favor until set aside by some higher authority.'' The record in this case does not disclose that the approval of the selection of these indemnity lands in the case at bar has ever been set aside by any higher authority, and such approval, as it stands undisturbed, is, upon the record here presented, conclusive evidence of the right of the plaintiff to a patent for such indemnity lands. As it appears, then, that as to the primary lands described in the contracts at bar it has been judicially determined that plaintiff is entitled to an undivided moiety thereof as tenant in common with the United States, and that in the general partition between these cotenants of the large body of land within the conflicting primary limits of the grant under the act of 1866, the plaintiff has selected all the primary lands described in such contracts, and that the same will be set off and patented to it, and as it further appears that as to the indemnity lands described in such contracts the local land officers have, by their approval of plaintiff's selection, recognized its right to a patent therefor, it necessarily follows that the finding of the trial court that it had been finally determined that plaintiff shall not receive a patent for said lands is not sustained by the evidence.

As to the finding of the court that the plaintiff had not used ordinary diligence to procure patents for such lands, less need be said. There is no evidence in the case to sustain this finding, but, on the contrary, what evidence was introduced on the subject (and it was all introduced by the plaintiff) shows that for several years prior to the execution of these contracts, and continuously thereafter, plaintiff at all times vigorously asserted its claim for all the lands, primary and indemnity, to which it claimed title under the act of 1866, and as early as 1888 it made application to the land department under the act of 1866 for patents to lands of similar character, and similarly situated to those described in the contracts here. These applications were based upon a favorable report on the construction of plaintiff's road from Mojave to Needles, made to the interior department about 1885 by the commissioners appointed by the President to examine it. Upon the filing of the report, a

protest against the acceptance or approval of it was filed by the Atlantic and Pacific Railroad Company, and thereupon action on the report of the commissioners was suspended. Until such report was accepted and approved by the secretary of the interior, patents could not be issued, and hence the application of 1888 for them was refused. It was not until September, 1897, that the interior department finally accepted the commissioners' report and approved the construction of the road. It was only then that it became possible for the plaintiff to obtain patents for such lands, and any application for them prior to that time would have been futile. While it appears that the plaintiff in fact filed its lists of selections of the lands described in the contract here in question in 1893 and 1894, the ordinary diligence to procure them which it contracted for would have been fully discharged had the application not been filed until the acceptance and approval by the secretary of the interior of the commissioners' report, which was the earliest possible time an application could have been effective and a patent procured upon it. Aside from the proceedings before the interior department involving plaintiff's right to patents for these lands, we have seen that its rights thereto were also a matter of litigation in the federal courts, culminating in the decision found in 183 U. S. 519, [22 Sup. Ct. 154], which we have heretofore referred to and discussed.

It will be thus observed that whatever delay in the procurement of patents for these lands occurred was occasioned, not by any want of ordinary diligence on the part of plaintiff, but from the failure of the land department until 1897 to approve the report of the commissioners, upon which approval alone patents could be issued, and on account of the litigation arising in the federal courts relative to plaintiff's right to patents. (*Wilson* v. *Southern Pacific R. R. Co.*, 135 Cal. 421, 425, [67 Pac. 688].) From these considerations it is obvious that the finding that the plaintiff did not use ordinary diligence, as provided in the contracts, to procure patents for these lands also finds no support in the evidence.

Several other points are made in the briefs of counsel, but, as the controlling one on this appeal is the sufficiency of the evidence to sustain the findings, we perceive no reason for discussing the others.

As the point that the evidence does not sustain the findings

is well taken, the order denying the motion for a new trial is reversed, and the cause remanded that a new trial may be had.

McFarland, J., and Henshaw, J., concurred.

Rehearing denied.