[L. A. No. 2255. In Bank.—May 28, 1912.]

# SOUTHERN PACIFIC RAILROAD COMPANY, Appellant, v. GEORGE L. ARNOLD, Respondent.

Public Lands—Branch-Line Grant to Southern Pacific Railroad Company—Indemnity Selections Cannot Be Made within Limits of Grant to Atlantic and Pacific Railroad.—By reason of the peculiar wording of the Southern Pacific Railroad Company's branch-line grant made by Act of Congress of March 3, 1871, that company was not entitled to select as indemnity-lands, under that grant, lands lying within the granted or within the indemnity limits of the Atlantic and Pacific Railroad grant made by the Act of Congress of July 27, 1866.

Id.—Indemnity Selections under Main-Line Grant.—The fact that lands had been adjudicated not to be liable to selection as indemnity lands under the branch-line grant of the Southern Pacific Railroad did not deprive that company of its right to make another and independent selection of the same lands under its main-line grant of July 27, 1866, and such adjudication against the validity of the branch-line selections did not conclude the company, except upon the title actually adjudicated.

Id.—Status of Land at Time of Indemnity Selection.—The right of such company to make an indemnity selection depends upon the *status* of the land at the date of such selection, irrespective of its *status* at any earlier period.

Id.—Distinctions between Primary and Indemnity Grants to Railroads.—The most important consideration which differentiates the primary grants from the indemnity grants is that the primary grants upon the filing and approval of maps of definite location took effect in *præsenti* by relation as of the date of the passage of the respective acts of grant. The indemnity grants being designed merely to make up deficiencies in the primary grants, did not transfer title until: 1. A right to make selection had arisen by virtue of the performance of the railroad construction contemplated by the granting act; 2. After the appropriate filing of the selected indemnity lands; and 3. After the approval of the secretary of the interior of such selections, upon which approval, by relation, the grant took effect, not as of the date of the granting act, but as of the date of the selection.

Id.—Indemnity Selections within Limits of Forfeited Grant to Atlantic and Pacific Railroad.—The Southern Pacific Railroad Company, under its main-line grant of 1866, after the grant to the Atlantic and Pacific Railroad had become forfeited and the title restored to the United States, had the right to select indemnity lands lying within either the place limits of the Atlantic and Pacific primary grant or within the limits of its indemnity grant.

ID.—ERRONEOUS RESTORATION OF LAND SELECTED TO PUBLIC DOMAIN—
SUBSEQUENT PATENTEE CHARGEABLE AS TRUSTEE FOR RAILROAD.—
If, after such an indemnity selection by the Southern Pacific Railroad
Company, the secretary of the interior, as the result of a mistake
of law, erroneously makes an order restoring the land to the public
domain, subject to entry with preferential right to purchase from
the United States in favor of *bona fide* purchasers from the railroad
company, as contemplated by the Act of Congress of March 3, 1887,
such action by him will be considered as a judicial rejection or dis-
approval of the selection, and if the erroneous ruling be not corrected
by him of his own initiative by a revocation of the order, since
*mandamus* will not lie to enforce a reversal of his ruling, the railroad
company can await the time when the United States shall have
parted with title, in which event, upon settled principles of equity,
it may maintain an action to have the patentee declared its trustee.

ID.—PATENTEE ALSO VENDEE UNDER CONTRACT TO PURCHASE FROM
RAILROAD.—If the patentee were an entryman wholly dissociated
from and disconnected with the railroad, his title would still be
subject to the superior equities of the railroad by virtue of such
indemnity selection. Much more must this be true in the case of a
vendee of the railroad who has repudiated his contract of pur-
chase and has secured his patent by representation that he is a
*bona fide* purchaser from the railroad, and who has done this in
defiance of his written contract to do no act to hinder, delay, or
impede the railroad from obtaining patent.

ID.—PRIORITY OF SELECTOR UNDER VALID INDEMNITY SELECTION.—The
due selection by a railroad company of public lands free from
other claims and within the indemnity limits of its grant, vests in
the selector a right to the land against all third persons attempting
thereafter to initiate a claim to the selected lands under any of the
general land laws.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

William Singer, Jr., and D. V. Cowden, for Appellant.

Anderson & Anderson, for Respondent.

HENSHAW, J.—Plaintiff brought this action to compel
the defendant to convey unto it a quarter section of land for
which defendant had received patent from the United States,
or pay the amount due under an executory contract by which
defendant agreed to purchase the land from the plaintiff.

The form of this contract and many facts and much law bearing upon this case will be found set forth in *Wilson* v. *Southern Pacific R. R. Co.*, 135 Cal. 421, [67 Pac. 688]; *Southern Pacific R. R. Co.* v. *Lippman*, 148 Cal. 480, [83 Pac. 445], and *Southern Pacific Co.* v. *Bovard*, 4 Cal. App. 76, [87 Pac. 203]. In brief, plaintiff agreed to use ordinary diligence to procure a patent for the land and defendant agreed to make payments on account of the purchase price of the land at stated periods and bound himself "never to deny that the tracts herein described, or any part of them, are a part of said grant, and will do no act to hinder, delay or impede the obtaining of patent for them by the party of the first part." "In case it be finally determined that patent shall not issue to said party of the first part (plaintiff) for all or any of the tracts herein described," the purchase money paid was to be refunded. The land in controversy is within the indemnity limits common to the Atlantic and Pacific grant made by the Act of Congress of July 27, 1866, [14 U. S. Stats. 292], the Southern Pacific main-line grant made by the same act and the Southern Pacific branch-line grant made by the Act of Congress of March 3, 1871. It was selected by the Southern Pacific Railroad Company on October 3, 1887, as branch-line indemnity land, and on March 3, 1898, as main-line indemnity land. The court finds that these selections were duly made and that in their making all the requirements of law and the rules and regulations of the secretary of the interior and the commissioner of the general land-office were complied with, and that at the date of such selection the land in suit was public land to which the United States then had full title, was not reserved, sold, granted, or otherwise appropriated, and was free from pre-emption or other claims or rights. The court found: "That by the decisions of the United States supreme court in *United States* v. *Southern Pacific R. R. Co.*, 146 U. S. 570, [36 L. Ed. 1091, 13 Sup. Ct. Rep. 152], and *Southern Pacific R. R. Co.* v. *United States,* 168 U. S. 1, [42 L. Ed. 355, 18 Sup. Ct. Rep. 18], decided on the 18th day of October, 1897, it was finally determined that the plaintiff had no right in the land described in the first finding hereof, by virtue of its selections on October 3, 1887." This, of course, is not a finding of fact but a conclusion of law resulting from the interpretation which the

trial court placed upon the decisions of the supreme court of the United States.

Its conclusion is sound. It may be considered as having been definitively settled by the supreme court of the United States, in cases decided since this appeal was taken, that, by reason of the peculiar wording of the Southern Pacific R. R. grant of 1871 (its branch-line grant) that company was not entitled to select as indemnity lands, under its branch-line grant, lands lying within the granted or within the indemnity limits of the Atlantic and Pacific grant of 1866. (*Southern Pacific R. R. Co. et al.* v. *United States*, 223 U. S. 560, [56 L. Ed, —, 32 Sup. Ct. Rep. 325]. We may, therefore, turn this consideration to the main-line indemnity selection of March 3, 1898. The finding as to this selection, as above set forth, is that it conformed in all respects to law, was of lands within the indemnity limits of the Southern Pacific R. R. grant of 1866, and was of lands which at the time of the selection were owned by the United States, free from any private claim of right. By *United States* v. *Southern Pacific R. R. Co.*, 223 U. S. 565, [56 L. Ed. —, 32 Sup. Ct. Rep. 326] it is declared that the fact that the lands had been adjudicated not to be liable to selection as indemnity lands under the branch-line grant to the Southern Pacific R. R. did not deprive the Southern Pacific of its right to make another separate and independent selection of the same lands under its main-line grant of 1866, and that the adjudication against the validity of the branch-line selections did not conclude the Southern Pacific R. R., excepting upon the title actually adjudicated, in such cases as *United States* v. *Southern Pacific R. R. Co.*, 146 U. S. 570, [36 L. Ed. 1091, 13 Sup. Ct. Rep. 152]; *Southern Pacific R. R. Co.* v. *United States*, 168 U. S. 1, [42 L. Ed. 355, 18 Sup. Ct. Rep. 18]; *Southern Pacific R. R. Co.* v. *United States*, 189 U. S. 447, [47 L. Ed. 896, 23 Sup. Ct. Rep. 567]. The doctrine of *Ryan* v. *Central Pacific Ry. Co.*, 99 U. S. 382, [25 L. Ed. 305], to the effect that the right to make an indemnity selection depends upon the *status* of the land at the date of such selection, irrespective of its *status* at any earlier period, is reaffirmed, and it is declared that this decision should be taken to express an "established and general principle." Such is the import and effect of the latest utterances of the supreme court of the United States.

The most important consideration which differentiates the primary grants from the indemnity grants is that the primary grants upon the filing and approval of maps of definite location took effect *in præsenti* by relation as of the date of the passage of the respective acts of grant. The indemnity grants being designed merely to make up deficiencies in the primary grants did not transfer title until: 1. A right to make selection had arisen by virtue of the performance of the railroad construction contemplated by the granting act; 2. After the appropriate filing of the selected indemnity lands; and, 3. After the approval of the secretary of the interior of such selections, upon which approval, by relation, the grant took effect, not as of the date of the granting act, but as of the date of selection. (*Oregon & California R. R. Co.* v. *United States,* 189 U. S. 112, [47 L. Ed. 726, 23 Sup. Ct. Rep. 615].). Therefore, as the Atlantic and Pacific had never performed its work so as to entitle it to make selection of indemnities, and so, of course, had never made such selections, there is here a freedom from any embarrassment which might have arisen under those conditions. It may be added that the Atlantic and Pacific grant was forfeited by Act of Congress of July 6, 1886 (24 U. S. Stats., 123); that the indemnity selection was made after this forfeiture and restoration of title to the United States, and that it is well settled that the right to make an indemnity selection depends upon the *status* of the land at the date of such selection irrespective of its *status* at any earlier period. (*Ryan* v. *Railroad Co.,* 99 U. S. 382, [25 L. Ed. 305].) And, finally, upon this point it should be remembered that the question of the general right of the Southern Pacific Railroad Company to select indemnity lands under its main-line grant within the place limits of the Atlantic and Pacific primary grant has been resolved in favor of the railroad company since this appeal was taken, and such selections have been upheld as to all lands, including those directly adjudicated upon by the supreme court of the United States in *Southern Pacific R. R. Co.* v. *United States,* 168 U. S. 1, [42 L. Ed. 355, 18 Sup. Ct. Rep. 18], where the selection was under the branch-line grant of 1871. (*Southern Pacific R. R. Co.* v. *United States,* 223 U. S. 565, [56 L. Ed. —, 32 Sup. Ct. Rep. 326].) Since it is thus placed beyond peradventure that the indemnity selection may be made of lands affected by the primary grant to the

Atlantic and Pacific, no doubt can be entertained of the right of selection of the land here in question which is within the indemnity limits common to both grants.

Notwithstanding the facts above found and shown to be correctly found, that the indemnity selection was in all respects proper, the secretary of the interior restored the land so covered by the selection to the public domain. This action of the interior department followed the decision of the supreme court in the case of the *Southern Pacific R. R. Co.* v. *United States,* 168 U. S. 1, [42 L. Ed. 355, 18 Sup. Ct. Rep. 18], and was manifestly taken under a mistaken view of the effect of that decision and of the rights of the appellant under its main-line indemnity selection, rights which have above been briefly touched upon and which will require later consideration. The order of restoration declared the lands to be subject to entry with preferential right to purchase from the United States in favor of *bona fide* purchasers from the railroad company as contemplated by the Act of Congress of March 3, 1887, [24 U. S. Stats. 556]. Under this provision, defendant representing himself to be a *bona fide* purchaser from the plaintiff, applied for and secured patent from the United States, the title derived under which patent, as has been said, plaintiff seeks to have decreed to be held in trust for it.

The order of the secretary of the interior restoring all these lands to the public domain was based upon a mistake of law— a misconstruction of the decision of the supreme court of the United States in 168 U. S. 1, a misconstruction which led the department to believe that plaintiff was not entitled to select indemnity lands under its main-line grant lying within the limits of the forfeited Atlantic and Pacific grant. That such an interpretation of the decision is erroneous in point of law is made plain by the later decisions of the supreme court of the United States which we have just considered (*Southern Pacific R. R. Co.* v. *United States,* 183 U. S. 519, [46 L. Ed. 307, 22 Sup. Ct. Rep. 154], and *Southern Pacific R. R. Co.* v. *United States,* 223 U. S. 565, [56 L. Ed. —, 32 Sup. Ct. Rep. 326].)

The restoration by the secretary of the interior to the public domain of the selected indemnity land with the right of entry thereon may be considered as a rejection or disapproval by him of such selection. We are brought to consider the correlated rights and duties of the secretary and of the selector under

such circumstances. The duty of the secretary in approving or rejecting such selection is not merely formal or ministerial. He has to exercise judgment and discretion first, in determining whether the selection was or was not properly made, and, second, in protecting the interests of the United States and such entrymen or others as may have claims upon any portion of the land in accordance with the laws of the United States. His action then in approving or rejecting is judicial (*Northern Pacific* v. *Soderberg*, 86 Fed. 49; *Kirwan* v. *Murphy*, 189 U. S. 35, [47 L. Ed. 698, 23 Sup. Ct. Rep. 599]; *Riverside Oil Co.* v. *Secretary Hitchcock*, 190 U. S. 317, [47 L. Ed. 1074, 23 Sup. Ct. Rep. 698]). The determination and action of the secretary thus being judicial, mandate will not lie to compel him to reverse his ruling or order, either of approval or rejection. But upon the other hand, as is said in *Cornelius* v. *Kessel*, 128 U. S. 461, [32 L. Ed. 482, 9 Sup. Ct. Rep. 122], his "power of supervision and correction is not an unlimited or arbitrary power." If it were it would vest the secretary with an extraordinary power beyond the reach of the courts, arbitrarily to destroy this and like grants; for if the secretary could thus arbitrarily reject one indemnity selection, he could reject all indemnity selections and the grantees would never be able to take that which the United States, through its Congress, had granted to them. It follows, therefore, that in case such a rejection is made through fraud or mistake of law, or fact, if the wrong be not corrected by the secretary of his own initiative by a revocation of the order, since *mandamus* will not lie to enforce a reversal of his ruling, the aggrieved party can only await the time when the United States shall have parted with title and then under well recognized and well settled principles of equity, begin his action to have the patentee declared his trustee; for, as said in *Lytle* v. *Arkansas,* 9 How. (U. S.) 332, [13 L. Ed. 153], "it is a well established principle that where an individual in the prosecution of a right does everything which the law requires him to do and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect him." (See, also, *Yosemite Valley Case,* 15 Wall. 91, [21 L. Ed. 82]; *Duluth etc. R. R. Co.* v. *Roy,* 173 U. S. 587, [43 L. Ed. 820, 19 Sup. Ct. Rep. 549]; *United States* v. *Winona etc. R. R. Co.,* 67 Fed. 959, [15 C. C. A. 96]; 26 Am. & Eng. Ency. of Law, p. 397; 10 Ency. U. S. Sup. Ct. Repts., p. 261.)

Coming thus to the correlative rights of the selector, all that has been said, of course, presupposes not only that the department has fallen into error, but that it is an error injurious to his vested rights, for, "to enable one to attack a patent from the government, it is not sufficient for him to show that there may have been error in adjudging the patent to the patentee; he must show that by the law properly administered the title should have been awarded to him. This does not mean that at the moment of time the patent issued, it should have been awarded to him. The acts performed by him may or may not have reached that completeness; but the claimant against the patent must so far bring himself within the laws as to entitle him, if not obstructed or prevented to complete his claim." (10 Ency. of U. S. Sup. Ct. Repts., p. 261.)

What, if any then, were the rights which this appellant acquired by virtue of its main-line grant selection of indemnity lands subject to selection? The trial court held that the selector acquired no rights by virtue of these facts. It is proper to say that the last utterances of the supreme court of the United States upon the subject at the time of the trial of this case were those reported in *Sjoli* v. *Dreschel*, 199 U. S. 564, [50 L. Ed. 311, 26 Sup. Ct. Rep. 154], and the learned judge of the trial court based his decision upon statements to be found in that case like the following: "Mere filing of lists of selections of indemnity lands did not have the effect to exclude them from occupancy under the pre-emption or homestead laws . . . they remained open, as before, to settlement or occupancy under the laws until the selections were formally approved by the secretary of the interior." Subsequently, however, and since the submission of this cause, the supreme court of the United States has declared this and like expressions in the Sjoli case to be *dicta*, has denied them any persuasive force and has declared that a due selection by a railroad company of public lands free from other claims and within the indemnity limits of its grant (such a selection as it is here found was made), vests in the selector a right to the land against all third persons attempting thereafter to initiate a claim to the selected lands under any of the general land laws. (*Weyerhauser* v. *Hoyt*, 219 U. S. 380, [55 L. Ed. 258, 31 Sup. Ct. Rep. 300]; *Campbell* v. *Weyerhauser*, 219 U. S. 425, [55 L. Ed. 279, 31 Sup. Ct. Rep. 321].) In the course

of its opinions in these cases the court quotes from its own earlier opinion in *St. Paul Railroad* v. *Winona Railroad,* 112 U. S. 720, [28 L. Ed. 872, 5 Sup. Ct. Rep. 334] : " 'It is no answer to this to say that the secretary of the interior certified these lands to the state for the use of the appellant. It is manifest that he did so under a mistake of the law, namely, that appellant, having made the earlier location of its road through these lands, became entitled to satisfy all its demands, either for lieu lands or for the extended grant of 1864, out of any odd section within twenty miles of that location, without regard to its proximity to the line of the other road. We have already shown that such is not the law, and this erroneous decision of his cannot deprive the Winona Company of rights which became vested by its selection of those lands. (*Johnson* v. *Townsley,* 13 Wall. 72, 80, [20 L. Ed. 485] ; *Gibson* v. *Chouteau,* 13 Wall. 92, 102, [20 L. Ed. 534] ; *Shepley* v. *Cowen,* 91 U. S. 330, 340, [23 L. Ed. 424] ; *Moore* v. *Robbins,* 96 U. S. 530, 536,' " [24 L. Ed. 848].) And this, it may be added, is in conformity with the opinion of this court upon a similar question, expressed in *Farnum* v. *Clarke,* 148 Cal. 610, [84 Pac. 166].

It results, therefore, that while by the selection thus duly made, the appellant did not acquire a perfected title, it did acquire vested equitable rights to title of which it could not be deprived by the fraud or mistake of the interior department and to which rights the courts will afford full protection when, as here, they are presented for consideration. The rejection of the selection was arbitrary and unwarranted and so appellant's equitable vested rights are superior to those of any claimants whose rights have been initiated subsequent to the filing of the due selection. Were the patentee in this case an entryman wholly dissociated from and disconnected with plaintiff, his title would still be subject to the superior equities of the appellant. Much more must this be true in the case of the vendee of plaintiff who has repudiated his contract by a failure to comply with its terms in the matter of payments (*Southern Pacific R. R. Co.* v. *Allen,* 112 Cal. 455, [44 Pac. 796] ), and has secured his patent by representation that he is a *bona fide* purchaser from appellant and who has done this in defiance of his written contract to do no act to hinder, delay, or impede the appellant from obtaining patent.

It is apparent, therefore, that plaintiff's bill is not lacking in equity. We express no opinion upon the equitable considerations of minor consequence,—namely, whether defendant should at this date and after his repudiation of the contract, be allowed to retain title to the land by a belated performance of his contract, or whether or not he should be allowed compensation for his costs and disbursements in the matter of securing the patent, since these are questions which can properly only come before us in review of the decision which the trial court may actually make upon these questions.

It should be plain, we think, from the foregoing that the order of restoration by the secretary of the interior was not a final determination that patent should not issue to appellant. The circumstances under which respondent secured patent from the United States are such as under the plainest principles of equity make him an involuntary trustee of the appellant of the title derived under that patent.

For which reasons the judgment is reversed and the cause remanded.

Melvin, J., Shaw, J., Lorigan, J., Sloss, J., and Angellotti, J., concurred.