[L. A. No. 445.    Department One.—May 25, 1899.]

SOUTHERN PACIFIC RAILROAD COMPANY, Appellant, v. FRANK A. WOOD et al., Respondents. SOUTHERN PACIFIC RAILROAD COMPANY, Appellant, v. FREDERICK B. JACK et al., Respondents.

PUBLIC LANDS—GRANT TO RAILROAD IN PRAESENTI.—The public lands of the United States granted *in praesenti* to the Southern Pacific Railroad Company by the act of Congress of July 27, 1866, included only the odd sections within the primary limits (other than those reserved, sold, or otherwise appropriated), which were free from pre-emption or other claims or rights, when the plat of the designated line of the road was filed.

ID.—RIGHT TO INDEMNITY LANDS—NECESSITY OF SELECTION.—The right to indemnity lands from which lands were to be selected in lieu

of lands within the primary limits otherwise disposed of, does not spring from a grant thereof *in praesenti*, either of sections or of quantity; and no right to any section thereof inured to the railroad company until the selection thereof was made, under the direction of the secretary of the interior, where it is not made to appear that all of the indemnity sections were insufficient to meet the deficiencies existing within the primary limits.

Id.—Relation of Title to Selected Lands.—The title obtained to lands selected within the indemnity limits relates only to the date of the selection, and not to the date of the act granting the lands.

Id.—Judicial Action of Secretary.—Under the provision for the selection of indemnity lands "under the direction of the secretary of the interior," the secretary acts judicially in determining whether the alleged loss has occurred within the primary limits, and whether the land selected is subject to selection.

Id.—Effect of Map of Definite Location.—The map of definite location and construction of the Southern Pacific Railroad, filed in 1889, did not perfect the title of the railroad company to any indemnity lands.

Id.—Withdrawal from Pre-emption or Sale—Map of General Route —Order of Secretary.—The filing of the map of the general route of the Southern Pacific Railroad in 1867 did not have the effect to withdraw the indemnity lands from pre-emption or sale. The withdrawal thereof made by order of the secretary of the interior did not imply any vested right therein in the railroad company, but was merely designed to give the company a reasonable time to ascertain deficiencies and make selections.

Id.—Revocation of Withdrawal — Right of Pre-emption—Judicial Notice.—The revocation of the withdrawal made by the subsequent order of the secretary of interior in August, 1887, had the effect to allow unselected indemnity lands to be pre-empted and title thereto secured by private individuals. The order of revocation being a public record, this court will take judicial notice thereof, and of its conclusiveness, as being within the power of the department of the interior.

Id.—Patents to Pre-emptioners — Paramount Title — Trust not Enforceable.—Patents issued to pre-emption claimants upon indemnity lands, whose rights accrued after the revocation of withdrawal thereof by the secretary of the interior, and prior to any selection thereof by the railroad company, are paramount to any subsequent attempt at selection thereof by the railroad company; and the latter cannot enforce a trust in such patents, under a complaint disclosing no prior vested right to the lands included therein.

APPEALS from judgments of the Superior Court of Kern County. J. W. Mahon, Judge.

The facts are stated in the opinion.

William Singer, Jr., and H. V. Reardan, for Appellant.

The indemnity lands are granted equally with the place lands, and, once identified, the company has the same title. The grant was of the full amount or quantity of land indicated. (*Ryan v. Central Pac. R. R. Co.,* 14 Saw. 239, 264; *Southern Pac. R. R. Co. v. Wiggs,* 14 Saw. 568; *Northern Pac. R. R. Co. v. Barnes,* 51 N. W. Rep. 401; *Northern Pac. R. R. Co. v. Amacker,* 1 C. C. A. 348, 349; *United States v. Colton etc. Co.,* 146 U. S. 615, 617, 618; *St. Paul etc. Co. v. Northern Pac. R. R. Co.,* 139 U. S. 9; *Chicago etc. Ry. v. Sioux City R. R.,* 3 McCrary, 300; *Barney v. Winona R. R.,* 24 Fed. Rep. 892; *St. Paul v. Winona R. R.,* 112 U. S. 730.) The law operates to exempt the indemnity lands from pre-emption or sale. (*Buttz v. Northern Pac. R. R. Co.,* 119 U. S. 72; *Southern Pac. R. R. Co. v. Araiza,* 57 Fed. Rep. 104; *Southern Pac. R. R. Co. v. Orton,* 16 Saw. 157; *Northern Pac. R. R. Co. v. Barnes,* 51 N. W. Rep. 386; *Wood v. Beach,* 156 U. S. 551.)

W. B. Wallace, for Respondents.

The subject of selecting indemnity lands is placed under the direction of the secretary of the interior, involving discretionary control. (*Northern Pac. R. R. Co.,* 11 Dec. Dept. Int. 511; *Knight v. United Land Assn.,* 142 U. S. 161; *Elling v. Thexton,* 16 Pac. Rep. 93.) The legislative provision for withdrawal applies only to primary limits. (*Southern Pac. R. R. v. McWharter,* 14 Dec. Dept. Int. 610; *Southern Pac. R. R. Co.,* 18 Dec. Dept. Int. 314.) The secretary may revoke an order withdrawing indemnity lands from pre-emption. (*Brady v. Southern Pac. R. R. Co.,* 5 Dec. Dept. Int. 658; Opinion of Secretary Lamar, 6 Dec. Dept. Int. 77, 79, 84-93.) Title to indemnity lands dates from selection and not from the grant. (*Northern Pac. R. R. Co. v. Mussa-Santry Land etc. Co.,* 168 U. S. 604; *Ryan v. Railroad Co.,* 99 U. S. 382; *Southern Pac. R. R. Co., supra.*) There may be a pre-emption settlement and title acquired upon indemnity lands not selected. (*Mudgett v. Dubuque etc. R. R. Co.,* 7 Dec. Dept. Int. 242; *Southern Pac. R. R. v. Barry,* 11 Dec. Dept. Int. 242.)

HAYNES, C.—These cases depend upon the same facts and are submitted together. They involve a contest as to certain

lands lying within the indemnity limits of the grant to plaintiff by act of Congress of July 27, 1866, the plaintiff claiming under said grant, and the defendants claiming under patents issued to them as settlers under the land laws of the United States. The defendants demurred to the complaints in both cases, the demurrers were sustained, and these appeals are taken by the plaintiff from the judgments thereupon entered against it.

Said act of Congress, upon which the plaintiff bases its claim to said lands, is entitled, "An act granting lands to aid in the construction of a railroad and telegraph line from the states of Missouri and Arkansas to the Pacific Coast." (14 U. S. Stats. 292.) Said act incorporated the Atlantic and Pacific Railroad Company, and by the third section granted certain lands to aid in its construction. It provided that where the road passed though the territories of the United States the odd sections within forty miles of the road, and where it passed through any state ten alternate sections per mile, designated by odd numbers, were granted, making the primary limits within the territories forty miles, and within the states twenty miles on each side of the road; the grant being of lands to which "the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, at the time the line of said road is designated by a plat thereof filed in the office of the commissioner of the general land office; and whenever prior to said time any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or pre-empted or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the secretary of the interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limit of said alternate sections, and not including the reserved numbers."

Section 6 of said act is as follows: "And be it further enacted: That the President of the United States shall cause the lands to be surveyed for forty miles in width on both sides of the entire line of said road after the general route shall be fixed, and as fast as may be required by the said railroad; and the odd sections of land hereby granted shall not be liable to sale or entry, or pre-emption, before or after they are surveyed, ex-

cept by said company, as provided in this act; but the provisions of the act of September, 1841, granting pre-emption rights, and the acts amendatory thereof, and of the act entitled, 'An act to secure homesteads to actual settlers on the public domain,' approved May 20, 1862, shall be and the same are hereby extended to all other lands on the line of said road when surveyed, excepting those hereby granted to said company."

Section 18 of said act authorized the Southern Pacific Railroad Company (the appellant here) to connect with said Atlantic and Pacific Railroad at such point near the boundary line of the state of California as they shall deem most suitable for a railroad line to San Francisco; "and in consideration thereof, to aid in its construction, shall have similar grants of land, subject to all the conditions and limitations herein provided, and shall be required to construct its road on the like regulations, as to time and manner, with the Atlantic and Pacific Railroad herein provided for."

The complaint alleged the substance of said section 18, and referred to said entire act as printed in said statutes, and made it part thereof. It then alleged that before January 3, 1867, plaintiff "fixed the general route" of the entire line of railroad it was authorized to construct, and on that day filed a map thereof in the general landoffice, that the same was approved by the commissioner, that on March 22, 1867, said commissioner, pursuant to the order of the secretary of the interior, withdrew all the odd-numbered sections of land lying within thirty miles of the line of said road as shown upon said map, from sale or location, pre-emption or homestead entry, and that the same have ever since remained so withdrawn; that on June 28, 1870, a joint resolution was passed by Congress (16 Stats. 382) authorizing appellant to construct its road as near as may be on the route indicated by its map of 1867; that prior to November 8, 1889, and within the time allowed by law, it completed its entire road along the line designated by said map, that its road was accepted, and that on and prior to November 8, 1889, it filed with the secretary of the interior a map of each of the sections of said road "as the same had been definitely located and constructed," and the same were accepted and approved by said secretary.

The fifth paragraph of the complaint described certain lands, parts of odd sections within the twenty-mile or place limits, which were lost to it, and the sixth paragraph described the lands now in controversy, which are situated within the indemnity limits described in said act, and alleged that they are opposite to and coterminous with the section of said road extending from Huron to Alcalde, "the map of definite location and construction of which was filed in the office of, and duly accepted and approved by, the secretary of the interior, on October 8, 1889."

The complaint further alleges that at the time the act of July 27, 1866, was passed the lands here in controversy were vacant and unappropriated public land of the United States, not mineral and not reserved, et cetera, and that they have ever since so remained, excepting only as they have been affected by said act of Congress, the said withdrawals, and the acts of the parties to this suit; the said lands were surveyed and plat filed May 1, 1874; that "on October 19, 1891, the plaintiff filed its list No. 44 in said landoffice, selecting the lands described in the sixth paragraph hereof in lieu of the lands described in the fifth paragraph"; that it thereby became entitled to a patent from the United States to the lands in question; that at that time, and ever since, plaintiff has demanded the issuance of such patent, but the United States and every officer thereof have at all times refused to issue it; that disregarding the rights of the plaintiff, a patent was issued to defendant Wood on October 30, 1888, conveying the legal title to him, that he took the legal title in trust for the plaintiff, that a conveyance has been demanded, et cetera. The prayer is, that plaintiff be adjudged to be the owner, and that defendants convey the title to it.

Defendants' demurrer stated three grounds: 1. That said complaint does not state facts sufficient to constitute a cause of action; 2. That plaintiff's cause of action is barred by the provisions of subdivision 4 of section 338, and sections 318 and 343 of the Code of Civil Procedure; and 3. That plaintiff has been guilty of gross laches in delaying to bring suit after the issuance of the patent to Wood, and after filing its selection.

Appellant, in its brief, states its first point thus: "The facts stated in the second amended complaint show the legal title to

be in the plaintiff." If that were true, there could be no rea-
son why it should resort to equity to compel a conveyance. But
in the complaint it is alleged that the defendants have the "legal
title," and, upon the theory that plaintiff has a prior and better
right, seeks to compel a conveyance.

Whatever right the plaintiff asserts, or may have, is based
upon said act of Congress of 1866, and its own acts thereunder,
while defendant's rights are based upon the pre-emption laws
of the United States, and their compliance therewith; and, as
defendants' patent was issued prior to the selection of the same
lands by the plaintiff, they must have the better right if said
lands were subject to pre-emption; and that they were so subject,
unless withdrawn from pre-emption by the act of 1866, or by
executive action thereunder, is not questioned.

Section 6 of said act (above quoted) provides: "And the odd
sections of land hereby granted shall not be liable to sale, or
entry, or pre-emption, before or after they are surveyed, ex-
cept by said company as provided in this act"; but it is further
provided that the pre-emption act of 1841, and the homestead
act of 1862, and the acts amendatory thereof, "shall be and the
same are hereby extended to all other lands on the line of said
road when surveyed, excepting those hereby granted to said
company."

If it be true, as contended by the learned counsel for plain-
tiff, that the "odd sections of land hereby granted" includes
the odd sections within the indemnity limits, there could have
been no reason for the provision that the homestead and pre-
emption laws should extend "to all other lands on the line of
said road," since the even-numbered sections were in no wise
affected by the grant.

But aside from this provision of the act it is well settled that
the words "hereby granted" do not include the odd sections
within the indemnity limits, and therefore it cannot be true that
upon selection the title relates back to the date of the act. As
to lands within the place or primary limits, it is uniformly
held that the words "be and is hereby granted" import a grant
*in praesenti*, and when the lands are ascertained by fixing the
line of the road in the manner prescribed in the act, the title
of the grantee relates back to the date of the act, but does not

attach to lands to which the United States did not have full
title at that date, or were otherwise excepted from the opera-
tion of the grant, even though they should afterward be freed
from the claim or possession which excluded them under the
terms of the grant. (*Newhall v. Sanger*, 92 U. S. 761.) But
as to indemnity lands, it is sufficient if they are free from
private claim at the time of their selection by the railroad com-
pany. (*Ryan v. Railroad Co.*, 99 U. S. 382.) In *Newhall v.
Sanger, supra,* an odd section within the place limits was covered
by a Mexican grant which was *sub judice* at the date of the act,
but shortly afterward the Mexican grant was adjudged void, and
it was held that the land did not pass under the grant to the
railroad company. In *Ryan v. Railroad Co., supra,* the land in
question was within the indemnity limits of the grant to the
railroad company, and was also covered by a Mexican grant
which was afterward declared void, and was selected by the com-
pany as indemnity land, and was afterward settled upon by
Ryan as a pre-emptioner. It was held that the railroad com-
pany's selection having been approved by the secretary of the
interior, it was entitled to the land, and the distinction between
that case and *Newhall v. Sanger, supra,* was pointed out, the
court saying: "It was within the secondary or indemnity terri-
tory where that deficiency was to be supplied. The railroad
company had not and could not have any claim to it until
specially selected, as it was, for that purpose."

These cases settle the proposition that the lands granted by
the act are those as to which the grant is *in praesenti,* and refer
only to the lands within the primary limits; and as to the in-
demnity lands, that the title, when they are selected, does not
relate back to the date of the act, but to the date of selection.

In *Cedar Rapids etc. R. R. Co. v. Herring,* 110 U. S. 27, the
above quotation from *Ryan v. Railroad Co., supra,* was repeated
with approval, and in addition the court said: "It is only when
the line and route of the road is definitely fixed that any right
of selection exists. This must necessarily be so, because until
then the quantity of land lost cannot be known, and the number
of sections to be selected can only then be ascertained." The
court also said: "It is obvious, however, that the right to these
odd sections, and the right to others in lieu of such odd sec-

tions as had previously been disposed of, depend upon very different circumstances, and it is not easy to see how rights can be vested in any particular section or sections of the latter class until it is ascertained how many of the original odd-numbered sections are thus lost, and until the grantee has exercised his right of selection. These latter, unlike the odd-numbered sections within the six-mile limit, are not ascertained and made specific by the protraction of the established line through the maps of the public land. They are not and cannot be made specific until the grantee's right of selection has been exercised."

This authority disposes of appellant's contention that the map of the general route, filed in 1867, fixed the limits of the indemnity lands, or operated as a withdrawal of them.

In *St. Paul R. R. Co. v. Winona R. R. Co.*, 112 U. S. 732, the court said: "It is true that in some cases the statute requires the land department to withdraw the land within these secondary limits from the market, and in others the officers do so voluntarily. This, however, is to give the company a reasonable time to ascertain their deficiencies and make their selections. It by no means implies a vested right in said company inconsistent with the right of the government to sell, or of any other company to select, which has the same right of selection within those limits."

If, therefore, it be true, as above stated, that the withdrawal or indemnity lands does not imply a vested right to them in the railroad company, it must be that they are not, and cannot be, included in the term "hereby granted." But Congress itself has placed a construction upon said act of July 27, 1866, or at least recognized the distinction observed by the courts between granted and indemnity lands. In the act passed July 5, 1886 (24 Stats. 123), entitled, "An act to forfeit the lands granted to the Atlantic and Pacific Railroad Company," et cetera (referring to the act here in question), the lands declared forfeited are described thus: "Which are adjacent to and coterminous with the uncompleted portions of the main line of said road, embraced within both the granted and indemnity limits, as contemplated to be constructed under and by the provisions of said act of July 27, 1866."

It is argued on behalf of appellant that the grant to it was

one of quantity. But this will not bear investigation. It is clear that Congress intended to grant all the odd-numbered sections within twenty miles of the road except those that were excepted from the grant, and the privilege was given the company to select odd sections within an additional ten miles in lieu of those that were lost to it within the primary limit. But Congress did not intend either to grant ten sections on each side of the road unconditionally, or to grant all the odd sections to which the United States had full title, and which were not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, within the additional ten miles, since, if that had been the intention, all the unappropriated odd sections within thirty miles of the road would have been granted; and hence the act requires the grantee to select the lieu lands within the indemnity limits to the extent only that lands were lost within the primary limits; and, therefore, the act requires that the selection of indemnity or lieu lands shall be made by the grantee under the direction of the secretary of the interior; or, as expressed in some other acts granting lands in aid of railroads, subject to his approval. In either case the secretary acts judicially. He must determine whether the alleged loss within the primary limits has in fact taken place, and whether the land selected is subject to selection. That the secretary acts judicially, see *Wisconsin Cent. Ry. Co. v. Price County*, 133 U. S. 496; and for a fuller discussion as to his powers, see *Knight v. United States Land Assn.*, 142 U. S. 161, 176.

The complaint, it is true, alleges that appellant's selection of the land in controversy was under the direction of the secretary of the interior; but it is further alleged that plaintiff has demanded that a patent issue to it for said lands, and that the United States and all its officers (which includes the secretary) have refused to issue it, and that on October 30, 1888, the United States conveyed the legal title to the defendant Wood by a patent then issued to him. The refusal to issue a patent to the plaintiff, though persistently demanded, and the further fact, distinctly alleged, that at a date some three years prior to plaintiff's selection the same land was patented to defendant Wood, is wholly inconsistent with the

allegation that the selection was made under the direction of
the secretary of the interior, and, in effect, is an allegation that
the selection was not made under his direction, or approved by
that officer. It is said, however, that at the date of the act
(July 27, 1866) the United States had then full title, that it
was not reserved, sold, granted, or otherwise appropriated, and
was free from pre-emption or other claims or rights; but that
was before the plaintiff filed its map of the general route of its
road, and said allegation is not made as of any other date than
that of the act; nor is the date of defendant's settlement on
the land in question alleged, *non constat* that it may have been
before the alleged withdrawal of the land from sale by the
order of the secretary made in March, 1867, or after its revoca-
tion on August 15, 1887. It is true it is further alleged that
"said sections have ever since remained so withdrawn by virtue
and force of said withdrawal"; but this allegation is a mere con-
clusion of law that having been once withdrawn it so remains
"by virtue and force of said withdrawal," and is not the
equivalent of an allegation that the withdrawal had not been re-
voked, while the allegation that a patent was issued to the de-
fendant shows that, as to the land so conveyed, the withdrawal
was revoked. The withdrawal, however, was in fact revoked
on August 15, 1887, by executive order, after a rule to show
cause was served upon the Atlantic and Pacific Company and
the Southern Pacific Company, and after each of said com-
panies had filed answers thereto. For the proceedings and
action of the secretary of the interior in relation thereto, see
6 Dec. Dep. Int. 77-93. This is a public record of which the
court takes judicial notice, and such action, being within the
power of the department of the interior, is conclusive, and
might be properly considered even if the complaint had alleged
that the withdrawal had not been revoked.

It is said by counsel for appellant that "where all the un-
disposed of odd sections within the exterior limits of the grant
are insufficient to make up the quantity granted, there need be
no selection; and by definite location the grantee perfects the
same title to the lands within the secondary or indemnity lim-
its," as to those in the primary limits. (Citing *St. Paul etc.
Ry. Co. v. Northern Pac. R. R. Co.*, 139 U. S. 19.)

As to the first part of this statement, the case cited held that, as all the lands within the indemnity limits only made up in part for the deficiencies, there was no occasion for the exercise of the judgment of the secretary in selecting from them, for they were all appropriated.

The controversy there was as to the respective rights of two different railroad corporations claiming under different grants the same indemnity lands, and not as to the right of either company to a specific parcel as against a claimant under the homestead or pre-emption laws; and therefore it was only necessary to determine whether all the odd sections within the indemnity limits were required to indemnify the company having the prior right for its losses within the place limits, these lands having been withdrawn by the land department for the benefit of the Northern Pacific Company; and the language used by the court must be read in the light of these facts; and in a later case (*United States v. Colton Marble etc. Co.*, 146 U. S. 616) the above case (*St. Paul etc. Ry. Co. v. Northern Pac. R. R. Co.*, supra) was cited, and the court said: "The ordinary rule with respect to lands within the indemnity limits is that no title passes until selection. Where, as here, the deficiency within the granted limits is so great that all the indemnity lands will not make good the loss, it has been held, in a contest between two railroad companies, that no formal selection was necessary to give them to the one having the older grant, as against the other company." But, however that may be, in the case at bar it is not alleged that all the odd sections within the indemnity limits are required to make up appellant's deficiencies within the primary limits, or that there are no other lands available for that purpose than those in controversy.

As to the second branch of appellant's contention, viz., that by the map of definite location the grantee perfects the same title to the indemnity lands as to those within the primary limits, but one case is cited which sustains that contention. That is the case of *Northern Pac. R. R. Co. v. Barnes*, 2 N. Dak. 310, a case which was expressly overruled in *Grandin v. La Bar*, 3 N. D. 446, 455, in an able opinion to which we refer in support of our conclusions in this case. In that case it was said: "But it required something more than the existence of

the grant, and the location and construction of the road in accordance with the terms of the grant, to vest the title to such additional lands in the company. It required a legal selection; and until such selection was made, and the legality of the selection in some manner established, the company could claim no right or interest whatever in any specific tract within the indemnity belt." (Citing *Ryan v. Railroad Co., supra; Grinnell v. Railroad Co.*, 103 U. S. 739; *Cedar Rapids R. R. Co. v. Herring*, 110 U. S. 27; *Kansas Pac. R. Co. v. Atchison etc. R. Co.*, 112 U. S. 414; *Wisconsin Cent. R. Co. v. Price County*, 133 U. S. 496, and other cases.)

In a supplemental brief appellant cites the case of *Southern Pac. R. Co. v. Groeck*, decided by the circuit court of appeals, ninth circuit, and reported in 87 Fed. Rep. 970. That case arose under the same grant which is the basis of appellant's claim in this case, and in most of its features is entirely similar; and it is urged that as the case before us involves federal questions, that the decision of the circuit court of appeals should be followed by this court; but I think that the opinion in that case is not sustained by the decisions of the supreme court of the United States upon vital questions involved in it, even if it were not distinguishable from the case before us in certain of its features. For example, it is there said: "A careful consideration of other decisions of the supreme court determining the nature of the right which the grantee of such a grant acquires to lands within the indemnity limits, prior to the time when definite location and selection of lieu lands is made, leads us to the conclusion that, in the case of a grant such as that now under consideration, by the operation of *the terms of the grant itself* the indemnity lands *are withdrawn* from settlement from the moment when a map of the general route of the road is made and filed. It may be deduced from those decisions that the grant to the appellant conferred upon the grantee, within the indemnity limits, more than a mere right to initiate a title by selection, and that the lands in the indemnity limits are as truly *granted lands*, within the terms of the act, as are the lands within the place limits. The difference is in the preliminary steps which are requisite to attach the title to the particular tracts which are granted." (Citing *St. Paul & S.*

*C. R. Co. v. Winona & St. P. R. Co.*, 113 U. S. 720, and *St. Paul & P. R. Co. v. Northern Pac. Co.*, 139 U. S. 1.)  The italics are ours.

The latter case has been already noticed, and the facts which make it broadly distinguishable from the Groeck case, and the one at bar, need not be repeated.  In *St. Paul Railroad v. Winona Railroad, supra,* the controversy arose under a grant to the territory of Minnesota for the benefit of several roads, both parties claiming under the same grant, and it was held that title to the lands within the primary limits relates, after the road is located according to law, to the date of the grant, while as to indemnity lands neither priority of grant, nor priority of location or of construction, gives priority of right, but this is determined by priority of selection, where the selection is made according to law.   In the opinion (p. 732) the court said:

"The plaintiff in error insists that the map of its line of road was filed in 1859.   The court of original jurisdiction finds that, up to the time of the trial in October, 1878, a period of nearly twenty years, no selection of these lands had ever been made by that company, or anyone for it.   Was there a vested right in this company, during all this time, to have not only these lands, but all the other odd sections within the twenty-mile limits on each side of the line of the road await its pleasure?  Had the settlers in that populous region no right to buy of the government because the company might choose to take them, or might, after all this delay, find out that they were necessary to make up deficiencies in other quarters?   How long were such lands to be withheld from market, and withdrawn from taxation, and forbidden to cultivation?"

In *Barney v. Winona Railroad Co.*, 117 U. S. 232, Mr. Justice Field, after noticing "the well-established distinction observed between granted lands and indemnity lands," said: "It is these 'granted lands' of the prior grant falling within the six-mile limit that in our opinion are reserved, and not the possible indemnity lands which might be subsequently acquired."

The case of *Bullz v. Northern Pac. Railroad*, 119 U. S. 55, cited by the court of appeals in the Groeck case, has no application to that case or this.   There the controversy related

solely to lands within the primary limits of the grant, which in that case was of all the odd sections within forty miles on each side of the road, and all of which were withdrawn by the statute from sale or pre-emption.

In the case of *Northern Pac. Railroad Co. v. Musser-Sauntry etc. Co.*, 168 U. S. 604, also cited in the Groeck case, the sole question was "whether the withdrawal from sale by the land department in March, 1866, of lands within the indemnity limits of the grant of 1856 and 1864 exempted such lands from the operation of the grant to the plaintiff," which was made after the withdrawal; and it was held that the act of the secretary withdrawing the lands from settlement was in effect a reservation within the terms of the later grant to the plaintiff and excepted them therefrom; but this does not support the holding in the Groeck case that the terms of the grant here under consideration operates of itself to withdraw the indemnity lands from settlement "from the moment when a map of the general route is made and filed," or that "the lands in the indemnity limits are as truly granted lands, within the terms of the act, as are the lands within the place limits."

In support of the same proposition, viz., that the grant itself withdraws the lands within the indemnity limits, the circuit court of appeals also quoted from *United States v. Southern Pacific Co.*, 146 U. S. 600, the following:

"When the general route of the road is thus fixed in good faith, and information thereof given to the land department by filing a map thereof with the commissioner of the general land office or the secretary of the interior, the law withdraws from sale or pre-emption the odd sections to the extent of forty miles on each side. The object of the law in this particular is plain; it is to preserve the land for the company to which in aid of the construction of the road it is granted."

This, however, was not the language of Mr. Justice Brewer, but was quoted from *Buttz v. Northern Pac. R. Co.*, *supra*, where the primary or place limits were forty miles on each side of the road, and had no reference to indemnity lands; nor did the case of *United States v. Southern Pacific Co.*, *supra*, have any reference to indemnity lands, but, as shown by the statement of facts, "the lands in controversy are within the

granted or place limits of both the Atlantic and Pacific and the Southern Pacific companies at the places where these lines cross"; and it was this fact that made the quotation from the Buttz case applicable.

The case of *Van Wyck v. Knevals*, 106 U. S. 360, cited by appellant, has no application here. In the statement of facts it is said: "The lands in dispute are within ten miles of the road as built and of the line as delineated on the map." They were in the place limits, and not indemnity lands.

In the Groeck case the court said: "After such lands have been once set aside by congressional act no authority is vested in the secretary of the interior, or in any officer of the land department, to restore them or open them to settlement." That is conceded; but it is clear that the indemnity lands were not set aside by "congressional act." As to the lands within the place limits section 6 of the act provided that "the odd sections of land hereby granted shall not be liable to sale or entry," except by the company; but the same section further provided that the homestead and pre-emption laws "shall be, and the same are hereby, extended to all other lands on the line of said road when surveyed, excepting those hereby granted to said company."

It has been often decided, as we have seen, that the words "hereby granted" import a grant *in praesenti*, which vests the title in the grantee as of the date of the grant. The expression "all other lands" must therefore include the indemnity lands, the title to which, when selected and approved, relates to the date of selection; and as to these lands the pre-emption and homestead laws were expressly extended. The only debatable question, therefore, is whether the land department had authority to withdraw said indemnity lands from settlement; and upon this question Mr. Secretary Lamar expressed the opinion that the act deprived the department of that power. (See 6 Dec. Dep. Int., 87-91.) But it is not necessary to a decision of the present case to decide that question, for as these lands were not withdrawn by force of the act of Congress, and the withdrawal having been revoked, and as the complaint does not allege that Wood's settlement was made before the revocation, or while they were withdrawn, it is not shown that his settlement

was illegal or unauthorized, or that the patent was improperly issued.

In a supplemental brief, filed by respondent, our attention is called to the case of *Moore v. Cormode,* 55 Pac. Rep. 217, decided by the supreme court of Washington, December 5, 1898. That case arose under the grant to the Northern Pacific Railroad, the language as to the indemnity lands being the same as in the grant to the appellant, and the general facts being the same as here.   The plaintiff was the grantee of the railroad company, and the action was brought to cancel defendants' patent, and to obtain possession.

We should like to quote largely from the opinion, but must content ourselves with a single sentence:

"After a consideration of the numerous cases cited in the briefs, we are of the opinion that the grant did not take effect as to any lands within the indemnity limits until actually selected by the company, and that prior thereto they were open to settlement."

In view of the conclusion reached upon the first ground of demurrer it is not necessary to consider either the second or third grounds.

I advise that the judgment appealed from be affirmed.

Britt, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

                        Garoutte, J., Van Dyke, J., Harrison, J.

Hearing in Bank denied.