[L. A. No. 6348.   Department One.—June 14, 1921.]

## SOUTHERN PACIFIC LAND COMPANY (a Corporation), Respondent, *v.* ALVIN R. MESERVE et al., Appellants.

[1] PUBLIC LANDS — RAILROAD GRANTS — LOCATION IN ODD-NUMBERED SECTIONS—PATENT—PRIMA FACIE EVIDENCE.—A patent from the United States, regularly issued by the officers of the United States, purporting to convey land granted to the Southern Pacific Railroad Company under the acts of Congress of July 26, 1866, and March 3, 1871, and which does not show on its face that the land embraced therein is situated in an odd-numbered section, is *prima facie* evidence that it is in an odd-numbered section, since there is a presumption that official duty has been duly performed.

[2] ID.—MAP OF RESURVEY UNDER ACT OF 1909—COMPETENCY AS PROOF OF LOCATION.—In an action to quiet title to a tract of land based on a patent made in pursuance of the grant from the United States to the Southern Pacific Railroad Company under the acts of Congress of July 27, 1866, and March 3, 1871, a map of a resurvey made under the act of Congress of March 3, 1909, for the purpose of ascertaining what lands had been selected and listed for patent under the railroad grant, is competent evidence to show that the tract in controversy is within an odd-numbered section, notwithstanding the provision of the act that no resurvey made thereunder shall be so executed as to impair the *bona fide* rights or claims of any claimant, entryman, or owner, where defendant's only claim of interest was under a desert entry which was canceled prior to the completion of the resurvey.

[3] ID.—EVIDENCE—OFFICIAL LETTER REGARDING RESURVEY—JUDICIAL NOTICE.—The court may take judicial notice of a letter of instructions from the commissioner of the land office to the United States surveyor-general in this state regarding the resurvey made under the act of Congress of March 3, 1909.

[4] ID.—DAMAGES—WRONGFUL OCCUPATION OF DESERT LAND—EXCESSIVE AWARD.—In an action for damages for the wrongful occupation of land, a judgment fixing the value of the use at two hundred dollars per year was excessive, where the use of the land was of no value without water, and water was not available from any other source than that owned by the defendant.

[5] ID.—PAYMENT UNTIL SURRENDER OF POSSESSION — UNAPPROVED FORM OF JUDGMENT.—Where the judgment is that the plaintiff recover damages "at the rate of two hundred dollars per annum" from a specified date until surrender of possession by defendants to plaintiff, the form is not approved by the supreme court.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Reversed.

The facts are stated in the opinion of the court.

Conkling & Brown and Meserve & Meserve for Appellants.

Frank Thunen for Respondent.

SHAW, J.—This is an action to recover possession of a tract of land, to quiet title thereto, and for damages for the withholding of possession thereof by the defendants. The action was dismissed as to Alvin R. Meserve and judgment was given for plaintiff against the other defendants, from which judgment said defendants appeal. The pleadings, findings, and judgment were in the usual form. The claim of the appellants is that the findings and judgment relating to the title to the land and damages are contrary to the evidence. The finding concerning title is that the plaintiff was the owner of the land and was entitled to the exclusive possession thereof and that the defendants had no right, title, or interest therein. The land in controversy is described as the southeast quarter of the southwest quarter of tract 188, township 13 south, range 14 east, San Bernardino meridian, as shown by the plats of existing official surveys of the United States.

The evidence shows a straight chain of title to the plaintiff based on a patent from the United States to the Southern Pacific Railroad Company, executed on November 9, 1915. This patent was made in pursuance of the grant from the United States to the Southern Pacific Railroad Company made by the acts of Congress of July 27, 1866, and March 3, 1871. (14 U. S. Stats. 292, sec. 18; 16 U. S. Stats. 573, sec. 23.) This grant covered only odd-numbered sections of land. The patent from the United States to the Southern Pacific Railroad Company included the particular tract in controversy as a part of tract 188 of township 13 south, range 14 east, San Bernardino meridian. The patent does not on its face show that tract 188 was in an odd-numbered section. [1] Upon the theory that the acts of Congress aforesaid do not authorize a patent

to the railroad company of land not in an odd-numbered section, appellants claim that in order to make the patent valid plaintiff should have proved that the tract claimed was a part of some odd-numbered section, and they contend that there was no evidence of that fact. There are two answers to this objection. There is a presumption that official duty has been duly performed. Since the proper officers of the United States selected and listed this land as a part of the land covered by said grant and issued the patent accordingly, the patent itself is *prima facie,* and in this form of action perhaps conclusive, evidence that the land was included in an odd-numbered section according to the survey of 1856, the survey in force at the date of said acts, if that fact was necessary to the validity of the patent. If in a collateral attack, such as the one here made, the patent is conclusive upon this point, there is no more to be said. If it is only *prima facie* evidence of the fact, it is sufficient, for in that event it puts the burden on the defendants to prove the contrary, and they introduced no evidence on the subject. The other answer is that a map from the government records was given in evidence, showing that the land in controversy is part of section 5 of said township and range. [2] Appellants contend that this map was not competent evidence because, as they claim, it was a resurvey made under the act of March 3, 1909 (35 U. S. Stats. 845, [8 Fed. Stats. Ann., 2d ed., p. 678; U. S. Comp Stats., sec. 4824]), which act provides that no resurvey made thereunder ''shall be so executed as to impair the *bona fide* rights or claims of any claimant, entryman or owner of lands'' affected thereby. The map itself shows that the survey which it delineates was made in February and March in the year 1912. [3] A letter of instructions from the commissioner of the land office to the United States surveyor-general in California regarding this alleged resurvey, of which letter we may take judicial notice (*Southern Pac. Co.* v. *Lipman,* 148 Cal. 491, [83 Pac. 445]; *Southern Pac. R. R. Co.* v. *Wood,* 124 Cal. 485, [57 Pac. 388]), under date of August 14, 1912, shows that the map was made for the purpose of ascertaining and designating the tracts of land in certain townships, including the one in controversy, which under the grant aforesaid had been selected and listed for patent to the Southern Pacific Railroad Company under said grant.

Furthermore, the only interest which the defendants claim in defense was under a desert land entry made by Alvin R. Meserve in 1907, and the evidence shows that on appeal by Meserve to the Secretary of the Interior this entry was canceled on February 28, 1912, prior to the completion of said resurvey and prior to the issuance of the patent to the Southern Pacific Railroad Company. It would seem, therefore, that whatever may be the state of the title of the plaintiff, the defendants had no title whatever except such as comes from the bare possession at the time said resurvey was 'made and hence the same could not impair their rights. Under any view of the case, therefore, the finding that the title was in the plaintiff was fully sustained by the evidence.

On the subject of damages, the findings are that the action was begun on November 16, 1916; that during the three years immediately preceding that date the two appellants were occupying the land without the consent of the plaintiff and were withholding possession thereof from the plaintiff; that the value of the use of the said land during said occupation was two hundred dollars per year. The judgment awards plaintiff damages "at the rate of two hundred dollars per annum from November 16, 1913, until surrender of possession by said defendants to plaintiff."

The only witness on the subject of value testified, on examination in chief, that the value of the use of the land in the condition it was in during the said period was two hundred dollars per year. On cross-examination he said that the land was desert land, and that the use thereof was of no value whatever unless water was applied thereto for irrigation; that said defendants had used water on the land during said period and that the value given by the witness was the value of the use with water. It further appeared that said defendants were able to get water on the land solely because they owned stock in Imperial Water Company No. 4; that no water for use on said land could be obtained except from said company, nor by anyone from said company unless he was the owner of stock of said company, and that the plaintiff never owned any such stock. There was further testimony to the effect that during said period the land could not have been rented at all unless the owner could buy stock from said company, so as to

obtain water therefor. It also appeared that the plaintiff might have been able to obtain water stock from said company by paying the price therefor.

[4] It is claimed by the appellants that this evidence showed that the damages allowed were excessive. Their theory is that the value shown by the evidence—two hundred dollars per year—is composed of two elements: First, the value of the use of the land; second, the value of the use of the water; that water for use on land is a species of real property; that the plaintiff owned no water at all, whereas the defendants were owners thereof, and that the computation made by the court allows plaintiff damages for the use of defendants' property. We see no escape from this conclusion. It appears from the evidence that the stock of Imperial Water Company No. 4 was valuable and could not be had without the payment of money—how much does not appear. It is obvious, however, from the circumstances that the use of the land was of no value without water, and as water was not available from any other source, that the water stock would probably be worth as much as the land.

The measure of damages for the wrongful occupation of land is the value of its use during the time of such occupation. (Civ. Code, sec. 3334.) In the circumstances here appearing this would not be the value of the use of both the land and the water. The plaintiff should have been required to prove the rental value of the land alone, taking into consideration the possibility and the expense of getting water thereon. That was its condition when defendants took possession. The application of the defendants' water right to the land was not, under the conditions existing in that locality, strictly speaking, an improvement on the land; in effect, it was a combination or union of two properties—water and land—the first owned by defendants; the second by plaintiff. It does not appear that the water stock ever became attached to or appurtenant to the land. Apparently it remains the property of defendants. The plaintiff was entitled only to the value of the use of that which belonged to it. The possibility that the plaintiff or its tenant could have procured water by buying the water stock was a circumstance which would tend to increase the rental value of the land. That value, so increased, would be all that

the plaintiff should have been allowed to recover in this case. The damages appear to be excessive.

[5] We are not to be understood as approving the form of the judgment on the subject of damages, as above quoted.

We find no reason for disturbing the finding with respect to the title to the property. It will be necessary, however, that there be a new trial of the issue on the subject of damages, and there should be a reversal for that purpose alone.

It is ordered that the judgment be reversed; that the cause be remanded for a new trial on the issue of the subject of damages, and for further proceedings in accordance with this opinion.

Olney, J., and Lawlor, J., concurred.

Hearing in Bank denied.

All the Justices concurred, except Wilbur, J., and Lennon, J., who were absent.