[Civ. No. 409. Fourth Appellate District.—September 23, 1931.]

WILL C. WOOD, as Superintendent of Banks, etc., Appellant, v. JACK KENNEDY et al., Defendants; J. C. SHARP, Respondent.

Whitelaw & Whitelaw for Appellant.

Utley & Nuffer for Respondent.

MARKS, J.—Appellant is the Superintendent of Banks of the state of California, and as such took possession of the property and business of the Farmers and Merchants Bank of Imperial on October 10, 1927. One of the assets of the bank which came into his possession was a promissory note dated February 2, 1926, in the principal sum of $1500, signed by Jack Kennedy and J. C. Sharp. The indorsements show interest paid to June 2, 1927, and a credit of

$170.16 on the principal. The complaint is in the usual form in actions of this kind.

Respondent filed an answer containing several special defenses. He also filed a cross-complaint for the recovery of the $170.16 which had been credited as having been paid by him on the note. The trial court gave judgment against Kennedy for the $1500 principal of the note, together with interest. It rendered judgment in favor of respondent on the promissory note and on the cross-complaint. Appellant has judgment against Kennedy for the full amount of the principal and the unpaid interest of the note, and respondent has judgment against appellant for $170.16. No appeal is taken from the judgment against Kennedy. The appeal is from the judgment awarding respondent the sum of $170.16 and denying appellant relief as against respondent for the sum of $1329.84.

The case comes before us on the judgment-roll. We must, therefore, assume that competent evidence was introduced in the court below to support all the findings of fact and the judgment.

Respondent's special defenses were all sustained by the trial court, which found the following portions of his pleadings true: ''The same (the note) was signed by him at the request of the said Farmers and Merchants Bank of Imperial as accommodation maker only and that he received no consideration for same, which the said Farmers and Merchants Bank of Imperial knew at the time of the making of said note. . . . At the time the offset in the sum of $170.16, indicated on the back of said note, was credited thereon, (it) . . . was taken from the amount which he (Sharp) had on deposit in said bank on said date, and same was credited on said note without his permission, knowledge or consent. . . . That the signature of the defendant J. C. Sharp on the note sued on in plaintiff's complaint herein was given and made without consideration to the said J. C. Sharp. That at said time one George Dameron, then president of the Farmers and Merchants Bank of Imperial, and then and there acting in his capacity as such, requested and solicited defendant J. C. Sharp to sign said note as surety for the accommodation and benefit of said bank and then and there informed defendant J. C. Sharp that said note was secured by property sufficient to

pay off same, which said property would be sold in the following spring and that there would be no actual liability to defendant Sharp resulting from the signing of said note. That it was agreed at the time between said defendant Sharp and the Farmers and Merchants Bank of Imperial, by and through its president, George Dameron, that defendant Sharp was not to be considered or to become responsible as surety or as security of said note. . . . That at the time of signing the note herein sued on defendant J. C. Sharp was told that said note was secured by a chattel mortgage which would adequately take care of the note, that the property would be sold the following spring and that there would be no liability as far as J. C. Sharp was concerned. That he inadvertently and through mistake signed said note, believing that said note was secured by a chattel mortgage on certain personal property adequate to satisfy said note, and which personal property was pointed out to defendant Sharp as being on a chattel mortgage securing the note defendant Sharp was to sign and that he thereafter signed said note under such mistaken belief that said note was secured by said chattel mortgage, and that had he known that said note was not secured by said chattel mortgage he would not have signed the same. . . . That on or about the 16th day of November, 1927, the Farmers and Merchants Bank of Imperial deducted from defendant J. C. Sharp's account in said bank the sum of $170.16 and applied said amount toward the purported partial payment of the note sued on herein. That the taking of said defendant Sharp's money as aforesaid was without authority from him and was without his consent and that at said time defendant Sharp owed said bank nothing. That no part of said sum has been repaid to defendant Sharp, and same is now wholly due, unpaid and owing from said Farmers and Merchants Bank of Imperial to defendant, J. C. Sharp. . . . That the said George Dameron, president of said Farmers and Merchants Bank of Imperial, acting as such, believed at said time he made the aforesaid representations to the said J. C. Sharp that said note was and/or would be secured by chattel mortgage on the aforesaid personal property and that thereafter said Farmers and Merchants Bank of Imperial, by and through its president, George Dameron, believing said note was secured by chattel mortgage, caused

a sale to be had on the aforementioned personal property by and with the consent of the defendants J. C. Sharp and Jack Kennedy, which said property was located on the Vanderhooval ranch, about six miles west of the city of El Centro, California, and as a result of said sale said bank received sufficient funds and proceeds from the property so sold to more than satisfy said note, together with interest.''

██ It will appear from these findings, first, that the note sued upon was given without any consideration to respondent Sharp; second, that the identical note sued upon was given by mistake on the part of Sharp and Dameron, who believed Sharp was signing another note which was secured by a chattel mortgage; third, that as far as Sharp was concerned the action was brought by the successor in interest of the payee of the accommodation paper which was given by Sharp without any consideration; fourth, that the note was given by Sharp for the accommodation of the payee without consideration and with the direct and distinct promise that Sharp would not be held liable thereon nor would he be called upon to pay the whole or any part thereof.

Under ordinary conditions these four circumstances would furnish sufficient grounds to defeat an action on the note· by its payee or its successor in interest, without notice and in due course of business. (*Coghlin* v. *May,* 17 Cal. 515; *Williams* v. *Hasshagen,* 166 Cal. 386 [137 Pac. 9]; *Hardison* v. *Davis,* 131 Cal. 635 [63 Pac. 1005]; *First Nat. Bank* v. *Reed,* 198 Cal. 252 [244 Pac. 368, 371]; 19 Cal. Jur. 1011.) In the absence of the intervention of the interests of creditors these authorities furnish ample reasons for the conclusion that no recovery could be had upon the promissory note which forms the subject matter of this action.

██ Appellant insists that as the Farmers and Merchants Bank of Imperial became insolvent and came into his hands for the administration and liquidation of its affairs, the rights of third parties, depositors in and creditors of the defunct bank, have intervened and will estop respondent from denying his liability upon the note. This question has not been directly decided in this state. However, there is *dictum* in each of two cases which indicates that such estoppel might be enforced under proper evidence. (*Bank of Orland* v. *Harlan,* 188 Cal. 413 [206

Pac. 75]; *First Nat. Bank* v. *Reed, supra.*) In the latter case the court said: "We find no merit in plaintiff's contention that the defendant, having given his note with the purpose and intent to deceive the bank examiner, is now estopped to assert that it is not a valid obligation. Those cases which hold that he is so estopped are distinguishable from the instant case. Those cases present situations wherein the bank became insolvent, wherein the rights of innocent third persons were involved, or wherein a consideration for the note was expressly found. The plea of estoppel is primarily for the protection of innocent third persons who would suffer injury if the defendant were permitted to set up the true state of facts." The rule contained in the *dictum* in the Reed case is well established in many jurisdictions of the United States. (See cases cited in 48 A. L. R. 720–728 and 64 A. L. R. 601–605, notes, and *Pauly* v. *O'Brien,* 69 Fed. 460.)

█ Respondent earnestly urges that the record before us does not show the insolvency of the Farmers and Merchants Bank of Imperial, and that, therefore, as no rights of creditors have intervened, the rule contended for by appellant cannot be held to apply to this case.

The only portions of the record relating to this question are as follows: It is alleged in the complaint "that on the 10th day of October, 1927, the plaintiff, as such Superintendent of Banks of the State of California, having reason to conclude that the Farmers and Merchants Bank of Imperial was then in an unsound and unsafe condition to transact the business for which it was organized, did on said date forthwith take possession of the property and business of said bank, and thereafter, and at all times since said date, the said Superintendent of Banks of the State of California has retained such possession of said bank and the property and business of said bank; and that said Superintendent of Banks did, on the 17th day of October, 1928, proceed to liquidate the affairs of said bank in accordance with the provisions of the Bank Act of the State of California; and since said 17th day of October, 1928, said Superintendent of Banks has been and now is Trustee in charge of the liquidation of said Farmers and Merchants Bank of Imperial." The findings contain the following: "That on the 10th day of October,

1927, the plaintiff, as such Superintendent of Banks of the State of California, having reason to conclude that the Farmers and Merchants Bank of Imperial was then insolvent and in an unsound and unsafe condition to transact the business for which it was organized, did on said date forthwith take possession of the property and business of said bank and thereafter, and at all times since said date, . . . has retained such possession of said bank and the property and business of said bank; and that said Superintendent of Banks did, on the 17th day of October, 1928, proceed to liquidate the affairs of said bank in accordance with the provisions of the Bank Act of the State of California, and since said 17th day of October, 1927, said Superintendent of Banks has been and now is Trustee in charge of the liquidation of said Farmers and Merchants Bank of Imperial.'' It must be admitted that these portions of both the complaint and findings were poorly drawn if they were intended to support the conclusion that the Farmers and Merchants Bank of Imperial was insolvent from and after the tenth day of October, 1927.

The question presents itself, can this court go beyond the record before it in concluding that this bank was and is insolvent? Can it draw upon the knowledge which it possesses and has in common with a great many other people that the bank is hopelessly insolvent and can never repay its creditors and depositors the money due them? This information is contained in the records in the office of the Superintendent of Banks of this state. It is also contained in the records and files in the office of the clerk of this court, which records disclose that files containing similar information are in the offices of the clerks of at least two other courts of record in this state. It is common and general knowledge in the county of Imperial, from the judges of its superior court to its humblest depositor, that the bank is hopelessly insolvent and that its creditors and depositors will only be paid a fractional part of the moneys due them. It would be a travesty upon the justice which the courts of this state are supposed to sustain to close our eyes to that which we see, our ears to that which we have heard, and to attempt to erase from our minds the knowledge which is lodged therein, in order to

sustain a judgment which deprives the creditors of the bank and its depositors of the money justly due them. The law does not require any such moronic conduct from us.

Section 1875 of the Code of Civil Procedure requires us to take judicial notice of the ''public and private official acts of the legislative, executive and judicial departments of this state and of the United States''. It has been held that the provisions of this section do not limit the matters of which judicial notice should be taken by the courts to those coming within its express terms. The subjects of which judicial notice should be taken has been extended far beyond the strict language of this section by many well-considered decisions. It could serve no good purpose to review all of them here. Many of them are digested and cited in 10 California Jurisprudence, 691 to 735, and in the 1929 and 1930 supplement to this volume.

In the case of *Sheehan* v. *Vedder*, 108 Cal. App. 419 [292 Pac. 175], it was held that ''Section 1875 of the Code of Civil Procedure provides in part as follows: 'Courts take judicial notice of the following facts: . . . Public and private official acts of the legislative, executive and judicial departments of this state and of the United States. . . . In all of these cases the court may resort for its aid to appropriate books and documents of reference.' This section has been construed to permit a court to take judicial notice of a letter from the commissioner of the General Land Office of the United States (*Southern Pac. Co.* v. *Lipman*, 148 Cal. 480 [83 Pac. 445]; *Southern Pac. Land Co.* v. *Meserve*, 186 Cal. 157 [198 Pac. 1055]); of the withdrawal of indemnity lands by the Secretary of the Interior (*Southern Pac. R. Co.* v. *Wood*, 124 Cal. 475 [57 Pac. 388]); of regulations of the Department of the Interior requiring the issuance of a receiver's receipt and entry of homestead location (*Whittaker* v. *Pendola*, 78 Cal. 296 [20 Pac. 680]), and of government surveys (*Rogers* v. *Cady*, 104 Cal. 288 [43 Am. St. Rep. 100, 38 Pac. 81]).''

In the case of *People* v. *Tossetti*, 107 Cal. App. 7 [289 Pac. 881, 883], it was held that ''A search of authorities and text-books reveals that the scope of judicial notice has been widened in recent years. Prof. Wigmore says: 'The doctrine of judicial notice contains the kernel of great pos-

sibilities, as yet not used, for improving the trial procedure in the courts of today' (5 Wigmore on Evidence, sec. 2583); and after discussion of certain phases thereof, courts are advised as follows: 'With these aspects of the principle in mind, a large field opens for reducing the tedious proof of notorious facts. The principle is an instrument of usefulness hitherto unimagined by judges. Let them make a liberal use of it; and thus avoid much of the needless failures of justice that are caused by the artificial impotence of judicial proceedings.' ''Judicial notice is a judicial short-cut,' states Mr. Justice Olney in the case of *Varcoe* v. *Lee,* 180 Cal. 338 [181 Pac. 223], 'a doing away with the formal necessity for evidence because there is no real necessity for it.' The case of *Varcoe* v. *Lee, supra,* is most illuminating on the doctrine of judicial notice and its application. In that case it is said, after quotations from Ruling Case Law: 'The three requirements so mentioned—that the matter be one of common and general knowledge, that it will be well established and authoritatively settled, be practically indisputable, and this common, general and certain knowledge exist in the particular jurisdiction—all are requirements dictated by the reason and purpose of the rule, which is to obviate the formal necessity for proof when the matter does not require proof'; and thereafter is the following: 'What may be a proper subject of judicial notice at one time or place may not be at another. It would be wholly unreasonable to require proof in the city of San Francisco of a city hall before a judge and jury made up of residents of that city and actually sitting in the building. But before a judge and jury in another county, proof should be made. The difference lies in the fact being one of common knowledge in one jurisdiction and not in the other.' . . . That 'an appellate court can properly take judicial notice of any matter of which the court of original jurisdiction may properly take notice', was stated in *Varcoe* v. *Lee, supra;* and the opinion of the court further is: 'In fact a particularly salutary use of the principle of judicial notice is to sustain on appeal, a judgment clearly in favor of the right party, but as to which there is in evidence an omission of some necessary fact which is yet indisputable and a matter of common knowledge and was probably

assumed without strict proof for that very reason.' We take it that it is just as important that a judgment should be reversed when it is rendered by a court having no jurisdiction of a cause. This was done in *People* v. *Wong Wang,* 92 Cal. 277 [28 Pac. 270]."

We believe that the instant case is one in which this court should take notice of the fact that the Farmers and Merchants Bank of Imperial is now, and was, at all times material to this action, insolvent; and of the further fact, that its assets will not be sufficient to pay its depositors and creditors in full. This being the case, and the rights of innocent third persons being involved, respondent should not be permitted to escape the liability created by the placing of his note among the securities of the bank as one of its actual assets.

While upon the record before us we do not care to definitely hold that the signing of this note by Sharp and its delivery for the accommodation of the bank was for the purpose of fictitiously and fraudulently increasing its assets, still such a conclusion is logical. No connection is shown between Sharp and Kennedy. The findings disclose that the note was given to the bank upon its request and for its accommodation and upon its promise not to collect thereon from Sharp. This could have suggested but one thing to him, namely, that the bank desired to place this note among its assets as good and collectible paper in the place and stead of a questionable obligation. As was said by Mr. Justice Ross in *Pauly* v. *O'Brien, supra,* and quoted in *Bank of Orland* v. *Harlan, supra:* "Upon these facts, I think it is clear that the plaintiff is entitled to judgment. It is said for the defendant that the note sued on was without consideration. Not so, according to the agreed statement of facts, for it is there stated that it was executed in place of and to take up the note of Naylor, then represented by the bank officers to be past due, and to be secured by collaterals which were believed to be ample to pay it, and which they represented the bank wanted to get 'out of past-due notes', and which, together with the collaterals, were to stand as collateral to the note executed by the defendant, upon the execution of which the Naylor note was entered as paid on the books of the bank, and the defendant's note was entered thereon 'as a discount for its face'.

It thus appears that the defendant executed his first note, subsequently renewing it from time to time, and ultimately by the note in suit, for the purpose of having it take the place of the Naylor note, which together with the collaterals, 'were to be collateral to the note' given by him. If, however, this was not really the case, but that, in truth, the transaction was a mere trick to make it appear to the government and to the creditors and stockholders of the bank that it had a valuable note when in fact it did not have one, the result must be the same, for, when parties employ legal instruments of an obligatory character for fraudulent and deceitful purposes, it is sound reason, as well as pure justice, to leave him bound who has bound himself. It will never do for the courts to hold that the officers of a bank, by the connivance of a third party, can give to it the semblance of solidity and security, and, when its insolvency is disclosed, that the third party can escape the consequences of his fraudulent act. Undoubtedly, the transaction in question originated with the officers of the bank, but to it the defendant became a willing party. It would require more credulity than I possess to believe that the defendant, when his brother, who was the bookkeeper of the bank, came to him with the proposition of its vice-president, in its every suggestion and essence deceptive and fraudulent, did not know its true character and purpose. So far as appears, Naylor was a total stranger to him. Why should he execute his note to take up the note of Naylor? What moved him to do it, except to enable the officers of the bank to supplant the overdue note of Naylor with a live note, which he now insists was without consideration and purely voluntary, but which enabled the bank officers to make a deceptive, and therefore fraudulent, showing of assets? Obviously nothing.''

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 16, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 19, 1931.