[Civ. No. 9828.   Third Dist.   Aug. 23, 1960.]

HENRIETTA VASCHE MOY et al., Respondents, v. JOE F. SILVEIRA, SR., Appellant.

*Assigned by Chairman of Judicial Council.

C. Ray Robinson, W. Eugene Craven and Charles E. Goff for Appellant.

Thomas J. Kane, Jr., and Kane & Canelo for Respondents.

PEEK, J.—Defendant Joe F. Silveira appeals from a money judgment in an ejectment action.

For many years defendant had leased the land in dispute from one Maybelle Kahl. It comprises approximately 33 acres and is contiguous to about 40 acres owned by him. The

Kahl tract is suitable for dry farming only, as the sole water supply is from a well and pump owned by the defendant and located on his land.

In 1943 Maybelle Kahl executed a deed of gift, reserving to herself a life estate and then granting a life estate to Guy G. and Gertrude Kahl for their joint lives and the life of the survivor, and granting the remainder to the plaintiffs herein, Henrietta Vasche Moy and Howard Vasche. Maybelle Kahl died on February 16, 1956, and immediately thereafter defendant entered into a written lease with the life tenants for a term of six years, expiring in January 1962, and calling for rent in the amount of $1,200 per annum. At the request of the life tenants defendant made a two-year advance payment and thus owed them no rent until December 31, 1958.

Gertrude Kahl, the survivor of the life tenants, died March 22, 1958. Shortly thereafter defendant leased his 40-acre tract and subleased the Kahl tract for the sum of $10,000 for the purpose of producing tomatoes over the entire area during the 1958 season. It was provided that the water supply on defendant's own land would be used over both tracts in the production of the crop. Defendant had already chiseled, plowed and double-disked the area preparatory for the production of tomatoes.

On March 25, the day of Gertrude Kahl's funeral, the plaintiffs visited the defendant at his home and informed him that they were the present owners of the property; that they were not interested in farming; and that they understood he had a year or two "to go" on his lease. They then gave him their names "in case something came up" about the property. At no time during this visit did they express an intention to evict the defendant or give him any reason to believe that he had occupied the land without their consent. Nothing whatsoever was done by plaintiffs until approximately July 14 when their attorney mailed a letter to the defendant notifying him that plaintiffs demanded $3,200 in rent for the period from March 22, 1958, through December 31, 1958, and that in the event of his failure to pay the amount demanded, they would institute an action in unlawful detainer against him. On July 31 following, the present complaint was filed. On September 15 the subtenants completed their harvest and possession of the premises was surrendered to the plaintiffs.

The trial court found that the entire 73 acres should be considered as a whole and that the $10,000 rental paid by defendant's subtenants should be divided between the parties

on an acreage basis; that plaintiffs therefore were entitled to 33/73ds thereof, or $4,520.55, less the sum of $642, the amount found to be the reasonable value of defendant's labor in preparing the land for planting. In so doing the trial court erroneously applied the measure of damages set forth in section 3335 of the Civil Code which provides in part: "For willfully holding over real property, by a person who entered upon the same, . . . by right of an estate terminable with any life or lives, after the termination of the . . . estate, without the consent of the party immediately entitled after such termination, the measure of damages is the value of the profits received during such holding over." ▮▮▮ It is the further rule that "very slight acts on the part of the landlord, . . . are sufficient to conclude his election and make the occupant his tenant." (*Cowell* v. *Snyder,* 15 Cal.App. 634, 638 [115 P. 961].)

In view of the rules as stated, there can be no question but that the uncontradicted evidence establishes as a matter of law that defendant's continued occupancy from March 25, 1958, to at least July 14, 1958, was with the implied consent of the plaintiffs. As previously noted, during that period plaintiffs did not demand possession of the property or in any manner communicate with defendant. On March 25 he was told they understood he had a year or two to go on his lease, that they did not intend to farm the land, and they gave him their addresses "in case something came up" about the property, thereby implying he was to continue in possession with their consent at least as a tenant at will. ▮▮▮ Even assuming that the tenancy at will was terminated by the letter of July 14 (although no notice was given pursuant to section 789 of the Civil Code) the continued occupancy, insofar as necessary to harvest the tomato crop, was not wrongful, for " 'if a life tenant, after making a lease, dies before the end of the term thereby created, the lessee is entitled to take the crops as against the remainderman.' (§ 251, *supra* [Tiffany's Landlord and Tenant].) And the same is true where a tenancy at will is terminated. . . ." (*Blaeholder* v. *Guthrie,* 17 Cal.App. 297, 299 [119 P. 524].) ▮▮▮ It necessarily follows that defendant was only liable for the reasonable rental value of plaintiffs' property from March 22, 1958, to September 15, 1958, the date the crop was harvested. (*Ross* v. *City of Long Beach,* 24 Cal.2d 258, 263 [148 P.2d 649] ; Civ. Code, § 3334.) And such rental value would not include the value of the use of the water from

defendant's adjoining property. (*Southern Pac. Land Co.* v. *Meserve*, 186 Cal. 157, 161-162 [198 P. 1055].)

The judgment is reversed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied September 22, 1960, and respondents' petition for a hearing by the Supreme Court was denied October 19, 1960.

*Assigned by Chairman of Judicial Council.